609 So.2d 1367 (1992)
Warren ZUNDELL, Appellant,
v.
DADE COUNTY SCHOOL BOARD and Gallagher Bassett Services, Inc., Appellees.
No. 91-1848.
District Court of Appeal of Florida, First District.
December 15, 1992.
Steven M. Dunn of Dunn & Johnson, P.A., Miami, for appellant.
Steven Kronenberg and Sylvia A. Krainin, of Adams, Kelley, Kronenberg & Kelley, Miami Lakes, for appellees.
EN BANC
WOLF, Judge.
In this workers' compensation appeal, appellant/claimant, Warren Zundell, seeks reversal of an order of the judge of compensation claims (JCC) which denied his claim for benefits on the ground that appellant's injury, an internal cardiovascular failure, diagnosed as an intracerebral subarachnoid hemorrhage, was noncompensable because the injury failed to meet the test promulgated *1368 by the Florida Supreme Court in Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1961), and Richard E. Mosca & Co., Inc. v. Mosca, 362 So.2d 1340 (Fla. 1978).
Appellant urges us to hold that, unless there is proof of a preexisting condition, a cardiovascular failure may be compensable without proof of an unusual physical strain or overexertion not routine to his job.[1] A holding of compensability on that basis and the facts of the instant case would require this court to make a number of substantial changes in existing law. Those changes would include (1) finding that proof of an emotional strain which may be routine to a particular job would be sufficient to demonstrate compensability of internal cardiovascular failures, (2) a requirement that an employer would have the burden of proof to demonstrate a preexisting condition prior to the employee having to prove the requisite conditions for compensability of an internal cardiovascular failure,[2] and (3) a determination that the failures of the internal cardiovascular system should be treated differently than heart attacks. We decline to make these substantial changes as we find no legal support for appellant's position. We therefore affirm the decision of the JCC.
Claimant recounted the facts pertaining to his injury during his deposition and later at the claims hearing. His testimony relating to the incident was identical in both instances, with the exception of one particular difference, as noted herein. Claimant testified at his deposition that on January 5, 1988, he was employed as a teacher in mathematics and in such capacity taught a ninth-grade class at Hialeah Junior High School. He stated that he was subject to a certain amount of stress from the school administrators for the reason that all teachers were to be evaluated that year based upon, among other things, the scores their students received on certain performance tests. On the date in question, one of his students entered class and engaged in various disruptive activities, including talking to other students, chewing gum, and other unauthorized behavior. After repeatedly attempting to get the child under control, claimant finally asked him to remove a large wad of gum from his mouth, and the student complied by throwing the gum "like a baseball into the waste can" and then screaming at the top of his lungs, "The gum is gone." Claimant promptly told him to report to the vice principal's office, to which request the child shouted, "You asked me to throw the gum away. I threw the gum away."
When Zundell attempted to escort the pupil to the office, the latter refused, stating that he intended to remain in class, at which point claimant announced, "You're not going back to my class." The child then replied that if he hit appellant, he would get into trouble. Appellant stated that he suddenly felt extremely tense because of the student's reaction. Later, after he had been taken to the disciplinary office, the student, without apparent authorization, returned to the classroom, and claimant was again forced to remove him to the school's disciplinary room. Shortly after returning to the classroom, appellant felt an unusual sensation come over him. He was unable to move his arms or stand up; he vomited and began to experience an excruciating headache. A rescue crew was immediately summoned, and claimant was taken by emergency vehicle to a local hospital.[3]
*1369 Dr. Basil Yates, a neurosurgeon, testified that in his opinion, founded upon reasonable medical probability, the unusual confrontation between the student and claimant caused the claimant's subarachnoid hemorrhage.[4] Dr. Yates felt that the claimant did not suffer from a preexisting condition, and that the hemorrhage was caused by a sudden surge of blood as a result of an elevation of blood pressure precipitated by the emotional encounter with the student. The doctor primarily based his opinion on several arteriograms which failed to reveal any evidence of an aneurysm (a bulge in the arterial wall), arterial malfunction, or lesion. The doctor was asked, however, whether the arteriogram would reveal a prior weakening of vessels in his brain. He responded
You can't tell that. The only thing an arteriogram does is outline the arteries. If there is a bulge on the artery, you can see that, but you have no idea of the integrity of the walls.
Based upon this evidence, the JCC found After reviewing the evidence, I find that this claim must be denied. Florida law requires that, in order for a cardiac or vascular failure to be compensable, it must be accompanied by either a physical trauma or a physical over-exertion not routine to the type of job duties to which the claimant was accustomed. There is absolutely no evidence that the claimant sustained any sort of physical trauma or touching. In fact, the claimant's testimony is uncontradicted that at no time was he touched by the disruptive student, nor did the disruptive student at any time even threaten to touch him, or make a violent gesture toward him. Both parties stipulated that the claimant sustained an internal failure of the cardiovascular system. In the absence of any evidence of a physical touching or physical over-exertion, I find that the claimant's internal cardiovascular failure must be deemed noncompensable. Victor Wine and Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1961); Richard E. Mosca & Company, Inc. v. Mosca, 362 So.2d 1340 (Fla. 1978); Skinner v. First Florida Building Corporation, 490 So.2d 1367 (Fla. 1st DCA 1986).
Appellant appeals this determination. It is undisputed that the factual determinations in the JCC's order are supported by competent substantial evidence. The dispute is one concerning the application of Victor Wine and Richard E. Mosca.
A claimant in all compensation cases must satisfy three elements of proof in order to establish a compensable injury: (1) That the worker suffered an accident, (2) that the accident occurred during the course of employment, and (3) the accident arose out of the employment. Southern Bell Tel. and Tel. Co. v. McCook, 355 So.2d 1166 (Fla. 1977). At issue in the instant case is the "arising out of employment" or causation element. This component must be established by showing a causal connection between the employment and the injury. Strother v. Morrison Cafeteria, 383 So.2d 623 (Fla. 1980).
The supreme court has determined that because of certain unique factors in cases which involve heart attacks and internal failures of the cardiovascular system, the causation element must be proven in a *1370 particular fashion.[5]Victor Wine, supra; Richard E. Mosca, supra.
In Victor Wine, the supreme court held that for a heart attack to be compensable, the claimant must show that he or she was subject to unusual strain or over-exertion not routine to the type of work that the employee was accustomed to performing. In Richard E. Mosca, the court further determined that
1) Heart attacks and internal failures of the cardiovascular system are to be treated in the same manner for the purposes of establishing the causation element in compensation cases, and
2) "Emotional strain is too elusive a factor independent of any physical activity in determining whether there is a causal connection between a heart attack or other failure of the cardiovascular system and claimant's employment."
Richard E. Mosca, supra at 1342. The claimant and the minority, however, would urge us to find that cardiovascular failure, allegedly precipitated by emotional stress, may be compensable because Victor Wine and Richard E. Mosca are distinguishable; the facts in those cases reveal that there was some kind of preexisting condition prior to the compensable incident. We reject the theory that a preexisting condition is a necessary element of proof prior to applying Victor Wine and Richard E. Mosca for the following reasons:
1) Requiring proof of a preexisting condition is contrary to the very reason for establishing a special test for determining compensability in heart attack and cardiovascular cases;
2) There have been a number of decisions from this court which have applied Victor Wine and Mosca without any mention of a preexisting condition; and
3) There have been no cases which hold that an employer has an initial burden of proof prior to applying the Victor Wine standard.
In Tintera v. Armour & Co., 362 So.2d 1344, 1346 (Fla. 1978), the supreme court approved the reasoning of the Industrial Relations Commission which found that

Victor Wine is premised upon recognition of the fact that a great portion of our work force comes upon the work scene with heart defects that would result in heart attacks in any event.
In many of these cases, the existence of a preexisting heart or cardiovascular defect may be difficult or impossible to establish. In a number of cases, it is apparent that the incident would not have occurred without the undetectable defect, and notwithstanding the existence of such a prior defect, it is difficult, if not impossible, to directly attribute the injury to emotional stresses. See Richard E. Mosca, supra. The instant case is illustrative of the difficulties involved.
The doctor's diagnosis in this case is based upon the fact that the arteriogram revealed no prior condition. Yet when asked whether the arteriogram would have revealed a weakness in the artery wall that may have led to the escape of blood, the doctor had to admit it would not. The speculative nature of the doctor's testimony concerning the prior existing condition coupled with the high incidence of heart and cardiovascular disease demonstrates the necessity for adopting a legal causation test as was done in Victor Wine and Richard E. Mosca. Abrogation of the Victor Wine test in this type of situation would allow compensation to be paid in many cases where it could not be reliably proven that the industry brought about the injury. The supreme court in University of Florida v. Massie, 602 So.2d 516 (Fla. 1992), cautioned against such an attempt by this court to legislate. Id. at 526.
Further, this court has applied the tenets of Victor Wine and Mosca in numerous cases where there is no mention of a preexisting *1371 condition. See, e.g., Diaz v. City of Miami, 427 So.2d 1085 (Fla. 1st DCA 1983); City of Opa Locka v. Quinlan, 451 So.2d 965 (Fla. 1st DCA 1984); Hodgen v. Burnup and Simms Engineering, 420 So.2d 885 (Fla. 1st DCA 1982). In City of Opa Locka and Diaz, while the facts surrounding the incident are recited, there is no mention of any preexisting condition. In those cases and in Hodgen, the general rule is restated: Emotional strain alone is not sufficient to establish a causal connection between employment and heart attacks or internal failures of the cardiovascular system. In addition, there is no prior Florida precedent which would indicate that Victor Wine shall only be applied where the employer has proven a preexisting condition. Such a rule would violate the general concept that the burden of proof is on the claimant to demonstrate compensability in all instances and the rule enumerated in Richard E. Mosca that the link between emotional stress alone and injuries of this type is too tenuous to provide for compensability. We therefore affirm.
In light of the lack of direct precedent on this important and potentially far-reaching issue, we certify the following question to be of great public importance:
WHETHER AN EMPLOYER IS REQUIRED TO PROVE THE EXISTENCE OF A PREEXISTING CONDITION IN COMPENSATION CASES INVOLVING HEART ATTACKS AND INTERNAL FAILURES OF THE CARDIOVASCULAR SYSTEM AS A PREREQUISITE TO THE APPLICATION OF THE TEST FOR COMPENSABILITY ESTABLISHED IN VICTOR WINE & LIQUOR, INC., V. BEASLEY AND RICHARD E. MOSCA & CO., INC. V. MOSCA?

JOANOS, C.J., and BOOTH, SMITH, ALLEN, MINER and KAHN, JJ., concur.
WEBSTER, J., dissents in part and concurs in part with opinion with which SHIVERS, WIGGINTON, ZEHMER and BARFIELD, JJ., concur.
ERVIN, J., dissents with opinion with which ZEHMER, J., concurs.
WEBSTER, Judge, dissenting in part, and concurring in part.
I believe that, by affirming the denial of benefits in this case, it is the majority who makes a "substantial change[] in existing law." Therefore, I am constrained to dissent from that decision.
The following statement is the foundation upon which the majority constructs the analysis which leads it to its ultimate conclusion:
In Victor Wine [& Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1962)], the supreme court held that for a heart attack to be compensable, the claimant must show that he or she was subject to unusual strain or overexertion not routine to the type of work that the employee was accustomed to performing.
Ante, at 1370. I submit that this foundation suffers from a major fault because, in my opinion, it incorrectly paraphrases the holding in Victor Wine.
Discussing the facts of the case, which included evidence that the claimant's employment activities had caused a heart attack sooner than it otherwise would have occurred through the normal progress of the claimant's pre-existing arteriosclerosis, the court in Victor Wine said the following, which I believe to have been the holding:
[W]e adopt the following rule for heart cases: When disabling heart attacks are involved and where such heart conditions are precipitated by work-connected exertion affecting a pre-existing non-disabling heart disease, said injuries are compensable only if the employee was at the time subject to unusual strain or overexertion not routine to the type of work he was accustomed to performing.
Thus, if there is competent substantial medical testimony, consistent with logic and reason, that the strain and exertion of a specifically identified effort, over and above the routine of the job, combined with a pre-existing non-disabling heart disease to produce death or disability sooner than it would otherwise have occurred from the normal progression of *1372 the disease, the employee has a right to some compensation.
141 So.2d at 588-89 (emphasis added). It would seem clear from the foregoing quotation that the court intended to address (and to create a different standard of proof for) only "heart cases" in which a "work-connected exertion affect[ed] a pre-existing non-disabling heart disease." Such a conclusion is, I believe, reinforced by the fact that, according to the court, it had granted rehearing in the case "to dispel the confusion apparently engendered by previous decisions of this court involving claims for compensation for a disability alleged to have resulted from the acceleration of a disability from a pre-existing heart disease by work-connected activities." Id. at 587 (emphasis added).
In Richard E. Mosca & Co. v. Mosca, 362 So.2d 1340 (Fla. 1978), the supreme court was called upon to review an award of compensation for a ruptured cerebral aneurysm. Noting that the aneurysm had been "congenital," and that the claimant had had "a history of medically controlled hypertension" (id. at 1341), the court characterized the issue before it as whether the Victor Wine "rule," "which heretofore has been applied only in cases involving heart attacks, should be extended to other internal failures of the cardiovascular system." Id. The holding in Mosca was that it should. In reaching its decision, the court quoted as the "rule" adopted in Victor Wine the language which I have identified above as the holding in Victor Wine.
The majority cites no decision subsequent to Victor Wine in which the supreme court expressly overrules or recedes from the Victor Wine rule, or holds that that rule extends to cases in which there is no evidence that the claimant suffered from any pre-existing cardiovascular defect or disease. On the contrary, numerous supreme court decisions handed down in the years subsequent to Victor Wine appear to imply a continued intent on the part of that court to limit the Victor Wine rule to cases in which the claimant had a pre-existing cardiovascular defect or disease. See, e.g., Friendly Frost Used Appliances v. Reiser, 152 So.2d 721, 722 (Fla. 1963) (suggesting that Victor Wine stands for the proposition that "`unusual strain or overexertion not routine to the type of work [the claimant] was accustomed to performing' ... is essential to recovery in cases of aggravation of pre-existing heart diseases"); Yates v. Gabrio Elec. Co., 167 So.2d 565, 567 (Fla. 1964) (stating that the holding in Victor Wine was "where a specifically identified exertion which is non-routine to the employee's job[] combines with a pre-existing non-disabling coronary ailment to produce death or disability prematurely, the death or disability is compensable to the extent to which it was produced by the non-routine activity"); Clayton v. Lease-Way Transp. Corp., 236 So.2d 765, 766 (Fla. 1970) (stating that "we ... adhere to our previous decisions ... that when disabling heart attacks are ... precipitated by work-connected exertion affecting a pre-existing non-disabling heart disease, [they] are compensable only if the employee was ... subject to unusual strain or overexertion not routine to the type of work he was accustomed to performing"); Reynolds v. Whitney Tank Lines, 279 So.2d 293 (Fla. 1973) (citing with approval the Victor Wine rule); Richards Dep't Store v. Donin, 365 So.2d 385 (Fla. 1978) (same); City of Miami v. Rosenberg, 396 So.2d 163 (Fla. 1981) (same).
Of particular interest regarding this analysis is the recent decision in University of Florida v. Massie, 602 So.2d 516 (Fla. 1992). In Massie, the supreme court was called upon to determine whether an exacerbation, caused by job-related stress, of the claimant's pre-existing multiple sclerosis was compensable. In concluding that it was not, the court reaffirmed the Victor Wine rule, which it then expressly extended to the fact situation with which it was presented. In doing so, it paraphrased that rule as follows: "In order for a pre-existing condition to be compensable, it must be exacerbated by some nonroutine, job-related physical exertion, or by some form of repeated physical trauma." Id. at 524.
As the majority correctly points out (ante, at 1369), all workers' compensation claimants must establish the existence of three separate elements before a compensable *1373 injury may be found to exist: (1) that the claimant suffered an "accident"; (2) that the "accident" occurred "in the course of employment"; and (3) that the "accident" arose out of the employment. See, e.g., Southern Bell Tel. & Tel. Co. v. McCook, 355 So.2d 1166 (Fla. 1977). It is well-established that, with regard to internal failure cases generally, a discrete physical impact, such as a fall or a blow, is not a necessary prerequisite to a finding that a claimant suffered an "accident"; rather, all that is necessary is proof that an unexpected or unusual injury was sustained while the claimant was performing his or her usual employment duties in a normal manner, even if the precise cause is unknown. See, e.g., Victor Wine, supra; Gray v. Employers Mut. Liab. Ins. Co., 64 So.2d 650 (Fla. 1952); Duff Hotel Co. v. Ficara, 150 Fla. 442, 7 So.2d 790 (1942). The majority does not seriously dispute the proposition that claimant suffered an "accident," as thus defined. Likewise, the majority does not dispute the proposition that the "accident" occurred "in the course of [claimant's] employment." Rather, the majority asserts that claimant failed to establish that the "accident" arose out of his employment.
The majority concludes that claimant has failed to establish that the "accident" arose out of his employment because he failed to meet the requirements of the Victor Wine rule, which it asserts applies to all internal failures involving the cardiovascular system, regardless of whether there was any pre-existing defect or disease. In particular, claimant failed to prove that his subarachnoid hemorrhage was the result of an "unusual strain or over-exertion not routine to the type of work [claimant] was accustomed to performing." Victor Wine, supra, at 589.
In this case, there is no evidence that claimant suffered from any pre-existing cardiovascular defect or disease. On the contrary, the uncontroverted evidence, lay and medical, is that the cause of claimant's hemorrhage was a confrontation with a student, which occurred "in the course of [claimant's] employment" as a teacher. There can be no question about the fact that, in the ordinary workers' compensation case (including those involving internal failures), such evidence would have been sufficient to satisfy the requirement that a claimant establish by competent substantial evidence, based upon reasonable medical probability, a causal connection between his or her injury and his or her employment  i.e., that the "accident" arose out of his or her employment. See generally Orange County Bd. of County Comm'rs v. Brenemen, 233 So.2d 377 (Fla. 1970); Gadsden County Bd. of Pub. Instruction v. Dickson, 191 So.2d 562 (Fla. 1966); ATE Fixture Fab v. Wagner, 559 So.2d 635 (Fla. 1st DCA 1990); Computer Products, Inc. v. Williams, 530 So.2d 1006 (Fla. 1st DCA 1988).
The majority concludes that the rigorous additional burden of proof required by the Victor Wine rule should be applied to all cases involving a failure of any part of the cardiovascular system (regardless of whether the claimant had a pre-existing cardiovascular defect or disease) because it is significantly more difficult to establish a pre-existing cardiovascular defect or disease than it is to establish other types of pre-existing defects or diseases. I do not know whether this is true or not. Certainly, the majority offers no medical authority to support this ex cathedra pronouncement. However, even if we assume, for purposes of argument, that such is the case, it seems to me that the appropriate branch of government to decide whether such a deficiency in the present level of medical technology is sufficiently important to justify a significantly more onerous burden of proof in cardiovascular failure cases than in internal failure cases generally is the legislature, rather than the judiciary.
It should be apparent to anyone who has read Florida's Workers' Compensation Law (Chapter 440, Florida Statutes) that it represents the manifestation of a legislative intent to deal comprehensively with the important topic of injuries in the workplace. "As has been pointed out many times[,] workmen's compensation legislation is designed to relieve society generally, and injured *1374 employees specifically, of the economic burden resulting from work[-]connected injuries and place the burden on industry." J.J. Murphy & Son, Inc. v. Gibbs, 137 So.2d 553, 558-59 (Fla. 1962). In my opinion, the legislature has demonstrated that it is quite capable of establishing exceptions to the general provisions regarding compensation when it concludes that it is appropriate to do so. Thus, for example, while it has defined "accident" to mean "an unexpected or unusual event or result, happening suddenly," it has then excluded from that definition "[a] mental or nervous injury due to stress, fright or excitement only, or disability or death due to the accidental acceleration or aggravation of a venereal disease or of a disease due to the habitual use of alcohol or controlled substances or narcotic drugs." § 440-02(1), Fla. Stat.(1991). Similarly, it has expressly provided that "occupational diseases" which result in disability or death are to be treated as "injur[ies] by accident," and has then specified what conditions must be met in order for the "occupational disease" to have arisen out of the employment. § 440.151(1)(a), Fla. Stat. (1991).
I believe that the Victor Wine rule is inconsistent with the purposes underlying adoption of workers' compensation laws generally, and Florida's Workers' Compensation Law in particular. Clearly, it places upon claimants a significantly more onerous burden than they bear in the ordinary workers' compensation case. I do not believe that it is within my sphere of responsibility to decide whether it is a wise or an unwise rule. However, I am not prepared to extend that rule beyond its expressed limits (i.e., cases in which there is proof of a pre-existing non-disabling cardiovascular condition), and to apply it to all cases involving a failure of some part of the cardiovascular system, regardless of whether there is proof of a pre-existing cardiovascular condition, until and unless the supreme court either expressly overrules Victor Wine or expressly extends what I perceive to be the holding of that case to all cases involving a failure of some part of the cardiovascular system. Therefore, I dissent from the majority's opinion.
Finally, I concur that this case presents a question of great public importance. However, I do not agree with the majority's statement of the question presented. I believe a more precise statement of the question to be:
WHETHER THE "RULE FOR HEART CASES" ANNOUNCED IN VICTOR WINE & LIQUOR, INC. v. BEASLEY AND LATER EXTENDED TO "OTHER INTERNAL FAILURES OF THE CARDIOVASCULAR SYSTEM" BY RICHARD E. MOSCA & CO. v. MOSCA APPLIES TO CASES IN WHICH THERE IS NO EVIDENCE THAT THE CLAIMANT SUFFERED FROM A "PRE-EXISTING NON-DISABLING" CARDIOVASCULAR DEFECT OR DISEASE, THEREBY REQUIRING A CLAIMANT TO PROVE THAT, AT THE TIME OF THE INJURY, HE OR SHE WAS "SUBJECT TO UNUSUAL STRAIN OR OVER-EXERTION NOT ROUTINE TO THE TYPE OF WORK HE [OR SHE] WAS ACCUSTOMED TO PERFORMING."
ERVIN, Judge, dissenting.
The present case illustrates the extremes to which we have gone in emphasizing the "arising out of" element rather than the "by accident" component of workers' compensation law[6] in our deliberations regarding whether a particular employee's injury may be deemed compensable. The facts in this case represent a nearly perfect example of a problem articulated by Professor Larson:
The greatest source of controversy, however, lies in the "accidental-cause versus accidental-result" problem. Its most familiar manifestation is the "usual-exertion" case. A man who, for years, has lifted hundred-pound sacks many times a day suffers a heart attack while lifting one in the usual way, and medical *1375 testimony confirms that the heavy lift did in fact cause the attack.
At once it becomes apparent that a court can announce a definition of accident as an "untoward event" or "unlooked for mishap" without necessarily having committed itself on this exact combination of facts. It depends on whether the unlooked-for item is the cause or the effect. If it is the cause  the outward circumstances immediately preceding the injury  nothing unexpected can be shown. But if it is the result on this individual that may be unlooked-for, then the injury can be described as accidental.
1A Arthur Larson, The Law of Workmen's Compensation § 37.20, at 7-13-14 (1992) [hereinafter: Larson] (emphasis added).
Once again we continue to obscure the "by accident" requirement, which is statutorily defined in part as "an unexpected or unusual event or result, happening suddenly." § 440.02(1), Fla. Stat. (1987). Appellant's accidental injury, a subarachnoid hemorrhage, obviously fit within the statutory definition in that its sudden occurrence was both unexpected and unusual. The majority ignores this fact and instead, in a case in which there is no evidence of a preexisting condition, exacts evidence of the legal test of causation, i.e., overexertion or unusual strain, as a prerequisite to compensability. In so ruling this court has now become a minority of one among all jurisdictions that have explicitly decided whether the elevated legal test of causation is applicable in a case in which there is no evidence of a preexisting condition. And, more to the point, we enter an area of law, uniquely applicable to prior weaknesses or diseases, which has been strewn with inconsistencies.
This dissent is divided into two parts, the first summarizing the various approaches in Florida case law for determining the compensability of an injury suffered during the course of employment when there is evidence of a preexisting condition, and the second discussing why the elevated legal causation standard is inapplicable in cases in which such evidence is absent.

I.
The present status of the law in this jurisdiction, demanding, as to certain types of injuries, that there be evidence of an unusual strain or overexertion before an employee will be compensated for an employment-related aggravation of a preexisting condition, was not always so. In early cases, the question of whether compensation benefits should be awarded for aggravated injuries was typically analyzed pursuant to the reasoning the Florida Supreme Court used in Duff Hotel Co. v. Ficara, 150 Fla. 442, 7 So.2d 790 (1942), wherein benefits were approved for a hernia caused by normal exertion in the course of employment. In Ficara, there was no evidence that claimant's hernia had preexisted his accident, and the employer argued that to be compensable, the hernia must immediately follow a literal accident, e.g., the injury must be preceded by some physical act, such as a slip, a misstep, or fall. In rejecting this argument, the court commented that "the word `accident' has reference to that which is unexpected, not designed or anticipated or may be brought on by a combination of fortuitous circumstances." Id. at 445, 7 So.2d at 791. Thus, the court approved the lower court's finding that the hernia the employee suffered "by ordinary lifting in the usual manner was an injury by accident within the purview of Workmen's Compensation." Id. at 446, 7 So.2d at 792 (emphasis added).
Although Ficara involved no evidence of a prior weakness or disease, its analysis appears to have been applied in other cases involving aggravations of personal conditions. For example, in Davis v. Artley Const. Co., 154 Fla. 481, 18 So.2d 255 (1944) (en banc), the court addressed the issue of whether a cerebral hemorrhage the employee suffered after becoming overheated while unloading a boxcar was compensable. The court observed that
[t]he statute [defining accident] ... does not require a health certificate [that the worker] ... be free from disease at the time he is employed or injured. It is reasonable to assume that a workman *1376 has physical infirmities and take[s] them if any, with him to his employment. The employer accepts the employee in such physical condition as he finds him and assumes the risk of a diseased condition aggravated by injury.
Id. at 486, 18 So.2d at 258.
The same year the supreme court reached its decision in Davis, it also decided Protectu Awning Shutter Co. v. Cline, 154 Fla. 30, 16 So.2d 342 (1944), approving the compensability of benefits for decedent's injury which resulted from a fall caused by an idiopathic condition, heart disease. In holding that the injury was by accident, the court made the following observations:
The purpose of the act is to shoulder on industry the expense incident to the hazards of industry; to lift from the public the burden to support those incapacitated by industry and to ultimately pass on to the consumers of the products of industry such expense. Our act affords no relief for disease of physical ailment not produced by industry. The act removes all questions of negligence, assumption of risk or wrongdoing on the part of the employer. To our mind what impels us to uphold this judgment, primarily, is that the injury which actually produced death was the fracture.

The fact that Cline suffered from heart disease which[] no doubt caused him to fall, does not preclude recovery. The chances are he might have fallen and sustained a fatal injury in his own home, yet, it is less likely had he remained in the quiet of his own home, for without the physical exertion encountered in his work by a man of his age and physical condition, the chances of his falling were less likely. Had Cline fallen onto a piece of machinery and sustained the injury an award would hardly be questioned. The fact that he chanced to fall on the floor and unfortunately lost his life should not preclude an award. ... The Compensation Law is based primarily on social responsibility of one to another. It surely cannot be said that its benefits should be extended in a less degree to those less fortunate than the average worker.
Id. at 31-32, 16 So.2d at 343 (emphasis added). As indicated in the above language, the court emphasized the fact that the fall was the cause of the injury and not the fact that the fall may have been precipitated by the employee's personal condition.
The above decisions, i.e., Davis, Cline, and Ficara, appear to represent a synthesis of the vast majority of legal decisions throughout the country collected in Professor Larson's treatise regarding aggravations of preexisting conditions. In such cases the rule generally applied is as follows:
Preexisting disease or infirmity of the employee does not disqualify a claim under the "arising out of employment" requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought. This is sometimes expressed by saying that the employer takes the employee as he finds him.
1 Larson, § 12.21 at 3-381, 3-433 (footnotes omitted). Professor Larson continues that "in practice most of the problems in this area are medical rather than legal." Id., § 12.24 at 3-452. Thus, a judge of compensation claims is simply called upon to determine whether evidence of medical causation exists to support an award of compensation, and it is usually irrelevant that there is no evidence of physical strain or overexertion. Under such circumstances, the responsibility of appellate courts in reviewing questions pertaining to aggravations of prior weaknesses is as follows:
Whether the employment aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact, not law, and a finding of fact on this point ... based on any medical testimony ... will not be disturbed on appeal.
Id., § 12.25 at X-XXX-XXX (1992) (footnote omitted) (emphasis added) (quoted with approval in Haas v. Seekell, 538 So.2d 1333, 1335-36 (Fla. 1st DCA 1989)).
*1377 An abrupt change in the law of this jurisdiction pertaining to aggravations of preexisting conditions occurred one year after the supreme court's holdings in Cline and Davis, when Cleary Bros. Const. Co. v. Nobles, 156 Fla. 408, 23 So.2d 525 (1945), was decided. In disapproving death benefits sought as a result of the employee's heart attack, and without referring to Ficara, the court observed:
The deceased did not fall out of the box car as the result of any accident. See Sec. 440.02(19), Florida Statutes, 1941, F.S.A. He did not slip, trip or stumble. He did not lose his balance and fall. He was not pushed, knocked or jostled out of the car. Prior to his collapse he had not been sick, dizzy or overheated. It does not appear that deceased had been subjected to any unusual strain or overexertion uncommon to the type of work he was accustomed to doing. The fact that he collapsed at his work, even though the work was arduous, is not sufficient, within itself, to make out a case for recovery... .
Id. at 410, 23 So.2d at 526 (emphasis added).
The Cleary decision began a slow, inexorable march of judicial opinions, followed in part in Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1961), and Richard E. Mosca & Co. v. Mosca, 362 So.2d 1340 (Fla. 1978), in which courts increasingly emphasized the principle that if there is nothing unusual in the cause of a worker's collapse, benefits will be denied in cases involving evidence of prior personal conditions, while ignoring the hitherto-established rule that a worker's collapse may itself be considered an unexpected result or event. See also Brooks-Scanlon, Inc. v. Lee, 44 So.2d 650 (Fla. 1950) (cerebral hemorrhage while claimant lifted boards at a sawmill); Peterson v. City Comm'n, 44 So.2d 423 (Fla. 1950) (claimant's left knee snapped when he squatted to a deep-knee position).
This progression was, however, temporarily halted in 1953, when the court, in deciding Gray v. Employers Mut. Liability Ins. Co., 64 So.2d 650 (Fla. 1953), explicitly receded from that line of decisions which had required the occurrence of a literal accident as a condition precedent to a compensation award. The court instead reaffirmed the rule announced in Ficara by recognizing "that an unexpected injury received in the ordinary performance of a duty in the usual manner is an injury `by accident' within the purview of the Workmen's Compensation Law, without the showing of anything fortuitous." Id. at 651.
Given the broad language in Gray upholding compensability under the conditions therein stated, one might have reasonably concluded that the court had returned to its pre-Cleary position, as exemplified by Davis, approving a compensation award based upon aggravation of a preexisting condition on the theory that the employer takes the employee as the employer finds him or her. Any such expectation was, however, short-lived. The court in Gray never expressly rejected that portion of Cleary requiring, as a prerequisite to approval of a claim seeking compensation benefits following a heart attack, that there be evidence submitted of an unusual strain or overexertion uncommon to the type of work the employee was accustomed to performing. It was, in fact, this very language in Cleary that set the stage for the supreme court's decision in Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1961) (on rehearing), in which the court established the following test to be applied to heart attacks suffered by employees during the course of employment: "When disabling heart attacks are involved and where such heart conditions are precipitated by work-connected exertion affecting a pre-existing non-disabling heart disease, said injuries are compensable only if the employee was at the time subject to unusual strain or over-exertion not routine to the type of work he was accustomed to performing."[7]Id. at 588-89 (emphasis added).
*1378 While demanding that evidence be adduced of unusual strain or overexertion in cases involving preexisting heart disease, the court in Victor Wine otherwise adhered to that which it had previously stated in Gray as to other types of internal failures: that such failures need only be "brought about by exertion in the performance of the regular or usual duties of the employment" in order to constitute an injury by accident, with no necessity that a showing be made of an unusual exertion. Id. at 588 (emphasis added). Thus, the status of the law following Victor Wine, until the court's decision in Richard E. Mosca & Co. v. Mosca, 362 So.2d 1340 (Fla. 1978), was that the legal test of causation, i.e., evidence of physical strain or overexertion, applied only to claims resulting from heart attacks in which there was evidence of preexisting heart disease,[8] and that all other types of internal failures would be considered compensable if caused by any work-related exertion, on the theory that the injury was one "by accident," meaning an unexpected or unusual event or result, happening suddenly.
A good example of a case illustrating the "any exertion" standard during the post-Victor Wine and pre-Mosca period is Tracy v. Americana Hotel, 234 So.2d 641 (Fla. 1970), wherein claimant, a chambermaid employed by a hotel, became extremely irritated because another employee had stripped her work cart, removing the towels and linen claimant had intended to use to complete her work assignments. Shortly thereafter, while claimant "snapped" a sheet across the width of a bed she was making, she suddenly experienced a wave of weakness throughout her body and fell to the floor. It was later determined that the claimant had sustained a ruptured aneurysm caused by a significant rise in her blood pressure. The supreme court approved the judge's finding, based upon medical evidence, that the precipitating factor causing the rupture was the claimant's anger upon finding her linen missing from her work cart, and that her anger, combined with the physical act of throwing a sheet across the bed, aggravated her preexisting hypertensive condition to the point that a rupture occurred. The court concluded therefrom, relying upon the statutory definition of accident, that "[c]laimant sustained her injury as an unexpected result flowing from the performance of her employment activity." Id. at 642 (emphasis added).
Other cases during this period, emphasizing the "by accident" element of a compensable injury and not requiring any additional proof of causation beyond the usual exertion involved in the ordinary performance of the worker's employment duties, include Worden v. Pratt & Whitney Aircraft, 256 So.2d 209 (Fla. 1972) (cataracts); Wilhelm v. Westminister Presbyterian Church, 235 So.2d 726 (Fla. 1970) (herniated disc); and Simmons v. City of Coral Gables, 186 So.2d 493 (Fla. 1966) (knee injury). These *1379 cases exemplify Professor Larson's statement that "[t]he `by accident' requirement is ... satisfied in most jurisdictions either if the cause was of an accidental character or if the effect was the unexpected result of routine performance of the claimant's duties. Accordingly, if the strain of claimant's usual exertions causes collapse ... the injury is held accidental." 1A Larson, § 38.00 at 7-19 (emphasis added).
The any-exertion rule, applicable to all internal failures other than heart attacks, was abandoned in part by the Florida Supreme Court in 1978 in Mosca when it applied the Victor Wine rule to all internal failures of the cardiovascular system and concluded that Mosca's claim, seeking compensation for a ruptured cerebral aneurysm, was barred by Victor Wine, because the only identifiable cause of his injury was emotional strain, unconnected with any unusual physical act or overexertion.[9] Thus, the effect of the court's decision in Mosca was again to diminish the "by accident" element in favor of the "arising out of" component, by extending the need for legal proof of causation to another class of cases that previously required only evidence of an unexpected effect or result, or a normal exertion in the ordinary course of one's employment.
Although the supreme court did not explicitly adopt the Victor Wine test in Southern Bell Telephone & Telegraph Co. v. McCook, 355 So.2d 1166 (Fla. 1977), a case involving an internal failure other than that of the cardiovascular system,[10] it nonetheless required therein that the employment in some way contribute to the risk or aggravate the preexisting condition, and the court apparently considered that the claim was not established by evidence demonstrating simply that the injury was an unexpected or unusual event or result, happening suddenly. The court again emphasized the "arising out of" component and ignored the "by accident" or unexpected-result element.
This court followed the McCook rule in Market Food Distributors, Inc. v. Levenson, 383 So.2d 726 (Fla. 1st DCA 1980), in determining that the employment did not contribute to or aggravate the employee's preexisting idiopathic condition, lumbar stenosis. Instead, however, of applying the Victor Wine rule in disapproving compensability, we explicitly adopted Professor Larson's legal/medical causation analysis.
Professor Larson's analysis of the problem relating to idiopathic cases is helpful. He suggests the problem can best be resolved by considering the legal cause of the injury, and then, its medical cause. 1B A. Larson, Workmen's Compensation Law, § 38.83 at 7-233 (1980). The inquiry focuses first upon what kind of exertion satisfies the legal test, i.e., whether the injury is one caused by the employment, and, if the exertion is legally sufficient to support compensation, next whether medically it caused the injury. Id. at 7-235. As to the legal test, if the employee brings to the job some personal element of risk unrelated to his employment (for example, a preexisting condition), before the injury can be found compensable, the employment must involve an exertion greater than that normally performed by the employee during his non-employment life. But, if the employee has no prior weakness or disease, any exertion connected with the employment and causally connected with the injury as a matter of medical fact is adequate to satisfy the legal test of causation. In both cases it is still necessary for a claimant to establish that medically the particular exertion causally contributed to the injury. Id. at 7-237.
Levenson, 383 So.2d at 727 (emphasis added). Unlike Victor Wine, Professor Larson's test requires as a prerequisite to compensability, in cases in which the employee brought some personal risk to the employment, that the employment involve an exertion greater than that normally performed by the employee during his nonemployment *1380 life,[11] and not, as required by Victor Wine, that the exertion be greater than that which the employee was routinely accustomed to performing during the course of his or her employment.[12]
The present status of the law in Florida pertaining to whether an asserted aggravation of a preexisting condition may be deemed compensable is thus inconsistent in its application. While Florida case law continues to follow the overwhelming majority of jurisdictions requiring only that an employee's exertion be routine in order to compensate for an aggravation of a prior hernia condition,[13]see Padrick Chevrolet Co. v. Crosby, 75 So.2d 762 (Fla. 1954), it nonetheless requires evidence of an unusual strain or overexertion not routine to the kind of labor the employee is accustomed to performing for all types of internal failures of the cardiovascular system, Victor Wine, Mosca, and in certain types of internal failures of generalized conditions,[14]University of Florida v. Massie, 602 So.2d 516 (Fla. 1992) (multiple sclerosis); Wolbert, Saxon & Middleton v. Warren, 444 So.2d 511 (Fla. 1st DCA 1984) (asthma). In determining the compensability of claims based upon alleged aggravations of preexisting back conditions, we have adopted, not the Victor Wine test, but Professor Larson's proposed test for legal causation, requiring that there be evidence submitted of an exertion greater than that normally performed by the employee during his or her normal, non-employment life. Market Food Distribs., Inc. v. Levenson, 383 So.2d at 727.
As the above summary of Florida cases indicates, there has been an increasing number of judicial decisions constricting a worker's right to compensability as to certain types of aggravations of preexisting conditions, notwithstanding the claimant's satisfaction of the medical test of causation. How far the legal test of causation will be extended to other kinds of injuries is uncertain. Moreover, as the number of injuries for which compensation is denied increases in Florida, such injuries are routinely compensated in the vast majority of out-of-state jurisdictions if the exertion is linked to the employment simply by medical evidence. The courts in Florida persist in remaining outside the mainstream of judicial decisions by demanding proof of a legal cause of compensability in addition to medical proof of causation.
Requirement of this additional evidentiary burden is puzzling for several reasons. *1381 The first is that the definition of accident has remained substantially the same since the inception of the act in 1935, and the early cases, as stated, construed the act broadly as furnishing compensation benefits under circumstances in which the injury was an unexpected or unusual event or result, happening suddenly, without regard to any requirement of an unusual strain or overexertion. Yet later cases imposed a more restrictive construction, despite the lack of any substantive legislative changes in the definitions of accident and injury.[15]
The second reason is that Florida law requires apportionment as to injuries resulting in death or permanent impairment involving preexisting conditions accelerated or aggravated by an accident arising out of and in the course of employment,[16] and provides for the employer's right to reimbursement from the Special Disability Trust Fund when an injured employee had a preexisting physical impairment.[17] As a consequence, an employer's obligation to fully pay compensation benefits is reduced if it presents proof showing compliance with the applicable statutory criteria. For example, in regard to the question of whether permanent disability benefits should be apportioned when a worker's preexisting condition is aggravated by a work-related injury, the Florida Supreme Court has recognized that it is the duty of the court in such cases to minimize any inconsistency with the maxim that the employer accepts the employee as the employer finds him or her. Evans v. Florida Indus. Comm'n, 196 So.2d 748, 751 (Fla. 1967). As a result, apportionment is considered appropriate only as to those disabilities which result from the normal progression of the preexisting disease, i.e., those that would have existed independently if the industrial accident had never occurred, with all other categories of permanent disabilities being otherwise fully compensated. Id. at 752.
In that the reason for requiring proof of an unusual strain or overexertion, in addition to medical evidence linking the aggravation with the employment exertion, is to relieve the employer from having to pay compensation for injuries suffered by the employee during the course of employment due to the normal progression of a preexisting disease,[18] it appears contrary to the *1382 legislative purpose behind the enactment of the apportionment provisions to construe the "arising out of" statutory language as requiring a total denial of compensation absent evidence of a legal cause of injury, if the medical evidence already enables a court to apportion out of the worker's permanent disability that which is attributable to the natural progression of the disease.
Consequently, I consider it inconsistent with the above statutory provisions and, more particularly, the long-recognized maxim that the employer takes the worker as the worker is, with all the strengths and weaknesses the worker brings to the job, Dependents of Chapman v. Hansen Scale Co., 495 So.2d 1357, 1360 (Miss. 1986), to deny compensation to one who aggravates a prior weakness or disease during the course of employment simply because the claimant is unable to satisfy the legal test of causation.

II.
In making the above observations, however, I realize that the Victor Wine test has become firmly embedded in our jurisdiction's workers' compensation law, and it is highly unlikely, given the present trend in the decisions from the Florida Supreme Court, that the court will reverse itself in this regard. See University of Florida v. Massie, 602 So.2d 516 (Fla. 1992); Leon County School Board v. Grimes, 548 So.2d 205 (Fla. 1989). Nevertheless, I do not know of any logical reason why the Victor Wine rule should be extended to a case, as that at bar, in which no proof has been presented that the employee brought a prior weakness or disease to the workplace. Indeed, as previously noted, the rule in Victor Wine explicitly applied to a preexisting condition. Moreover, the supreme court has never expressly receded from Duff Hotel Co. v. Ficara, 150 Fla. 442, 7 So.2d 790 (1942), in which it approved the compensability of a hernia which did not preexist the accident, on the theory that it was an accidental injury, e.g., an unexpected event or result which followed an ordinary exertion in a routine manner.
In that, as earlier observed, the primary justification for requiring proof of an overexertion not ordinarily performed by the employee is to reduce the chance that an employer might be required to pay compensation claims involving injuries caused by a personal-risk element unrelated to the employment, I consider this rationale to be immaterial in situations wherein no proof is adduced that the employee had any such personal risk. Therefore, in the absence of such evidence, no need arises to apply the Victor Wine test. As earlier stated, we have previously applied Professor Larson's legal/medical causation test, see Market Food Distributors, Inc. v. Levenson, 383 So.2d 726 (Fla. 1st DCA 1980), and I consider it inconsistent for this court to decline to apply the test here.
To summarize my position: In situations in which no proof is offered that the claimant brought some personal-risk contribution to the employment, proof of any exertion connected with the employment and causally connected with the injury as a matter of medical fact should satisfy the "arising out of" test, and no proof need be offered of an unusual strain or overexertion not routine to the type of work the claimant was accustomed to performing.[19] *1383 See Ficara, 150 Fla. at 444-46, 7 So.2d at 791-92. Nor is there any requirement, under such circumstances, in order to satisfy the "by accident" element, that emotional strain be accompanied by physical trauma or contact. The injury, here the internal failure, was itself an unexpected result, happening suddenly, and it need not have been preceded by an unexpected or unusual cause.
In its opinion affirming the order of denial, the majority states that if this court were to hold that compensation benefits should be granted without proof of an unusual physical strain or overexertion not routine to the claimant's job, we would be required to make a number of substantial changes in existing law which would include, among others, a finding that proof of an emotional strain which is routine to a particular job is sufficient to demonstrate compensability of internal cardiovascular failures. I readily agree that if a claimant presented medical proof linking a work-related emotional strain to a physical injury,[20] and the emotional strain was routine to the duties the worker was accustomed to performing, such evidence should be sufficient to demonstrate the compensability of the injury in cases in which no proof is presented of a prior weakness or disease, but I disagree that in so holding we would be making any substantial change in existing case law, in that the present case is one of first impression in this jurisdiction.
The majority has cited no prior decision in which either the Florida Supreme Court or this court addressed the precise issue now presented: Whether the Victor Wine rule, requiring evidence of an unusual strain or overexertion not routine to the type of work the employee is accustomed to performing, is applicable to a case involving an injury suffered in the course of employment, in which no evidence is offered regarding the existence of a prior personal condition? The rule is firmly established that a prior decision has no precedential effect in a later case as to any question not raised and not considered in the earlier opinion. In re Blankenship's Estate, 122 So.2d 466 (Fla. 1960); City of Miami Beach v. Traina, 73 So.2d 860 (Fla. 1954); City of Miami v. Stegemann, 158 So.2d 583 (Fla. 3d DCA 1963). Thus, although the Victor Wine rule may have been applied in other cases in which the facts do not reveal whether the employee suffered from a preexisting condition, such cases obviously have no precedential effect in a later case involving facts clearly disclosing the absence of a prior weakness or disease, and in which an issue is squarely raised regarding the applicability of the Victor Wine rule.
By adopting the position advocated in this dissent, we would simply be following the vast majority of decisions from out-of-state jurisdictions finding compensability in situations wherein the work-related exertion involved only emotional impact or stimulus resulting in a distinct physical injury. See 1B Larson § 42.21(a) at 7-813 n. 38. See also Pukaluk v. Insurance Co. of N. Am., 7 A.D.2d 676, 179 N.Y.S.2d 173 (1958) (heart attack compensable following cleaning woman's fright upon seeing person whom she believed to be an intruder who was in fact landlady); Miller v. Bingham County, 310 P.2d 1089 (Idaho 1957) (cerebral hemorrhage compensable, suffered within eight hours after employee had experienced fright while narrowly averting a collision with automobile carrying small children); Pickerell v. Schumacher, 242 N.Y. 577, 152 N.E. 434 (1926) (claimant's cerebral apoplexy compensable in that it resulted from fright when vehicle rolled backwards and emergency brake failed).
*1384 The majority next asserts that if this court were to approve compensability, the burden of proof would be placed upon the employer to demonstrate the presence of a preexisting condition prior to the employee having to establish the requisite conditions for compensability of an internal cardiovascular failure. Initially, I see no reason to reach any such issue in the present case in that the record before us discloses that it was the employee  not the employer  who presented evidence that he did not suffer from any weakness of the cardiovascular system prior to experiencing his subarachnoid hemorrhage. In addition to the worker's testimony that he was free from any preexisting condition which may have predisposed him to the injury suffered, the deposition testimony of Dr. Yates corroborated such testimony.
Even if we were required to decide the issue, which the majority feels so repugnant, and, in so doing, placed the burden on the employer, any such decision would simply comply with the universally recognized principle of law that one who raises an issue as an affirmative defense should have the burden of presenting evidence in support of such defense. In fact, cases from other jurisdictions applying Professor Larson's "any exertion" test to situations in which no evidence was offered of a prior weakness or condition, routinely place the burden of proof on the party asserting the existence of a prior weakness or disease. See, e.g., Bartlett Tree Experts Co. v. Johnson, 129 N.H. 703, 532 A.2d 1373 (1987); Haveg Indus., Inc. v. Humphrey, 456 A.2d 1220 (Del. 1983).
Additionally, the majority states that an approval of compensability, without requiring evidence of an unusual physical strain or overexertion not routine to the worker's job, would, under the circumstances, require as well a determination that failures of the internal cardiovascular system be treated differently from heart attacks. In that this dissent advocates only an adoption of that portion of Professor Larson's proposed test for determining whether an injury suffered by an employee during the course of employment arose out of employment in cases wherein no proof is presented of a prior, personal condition, no distinction would be made in such cases between heart attacks and other internal failures. Thus, the test would be uniformly applied to all internal failures and not simply to those of the cardiovascular system.
Finally, the majority refers to the speculative nature of the doctor's testimony regarding whether the claimant suffered from a personal condition. I assume that the majority has not concluded that the attending physician's testimony supported an implicit finding that claimant suffered from a prior weakness or disease. Certainly, the judge below never made any such finding. If he had done so and the issue on appeal related simply to whether there was any competent, substantial medical evidence sufficient to support the finding, I cannot conceive that any appellate court would, on this record, have affirmed the same. Dr. Yates, a neurosurgeon, testified without any contradiction that in his opinion, founded upon reasonable medical probability, the claimant's confrontation with the student caused the claimant's subarachnoid hemorrhage. In addition to the history taken from claimant, Dr. Yates based his opinion upon his examination of several cerebral arteriograms of Zundell, from which he was unable to find any prior condition which may have predisposed claimant to the injury, such as a weakened wall of an artery which could result in an aneurysm, an arteriovenous malfunction, or any lesion of that sort. The fact that the doctor testified that the arteriogram could not reveal a prior weakening of vessels in Zundell's brain, but could otherwise reveal a bulge in the artery, certainly does not compromise Dr. Yates' medical opinion directly connecting claimant's injury to the emotional encounter.
An appellate court can do no more than review the record before it, and it would be entirely inappropriate for us to decide that because the tests Dr. Yates conducted did not conclusively rule out all possibilities of any prior weakening of the vessels in the employee's brain, Dr. Yates' opinion had no evidentiary foundation. On the contrary, based upon all the evidence in the record before us, it would be entirely speculative for us to say that Zundell must have suffered from preexisting cerebral disease. *1385 As Professor Larson points out, it is not at all uncommon for a record to arrive before an appellate court showing, for example, that a worker with no prior history of heart disease suffered a heart attack. Larson asks the following question as to what a court should do under such circumstances:
Shall it say that, although there is no evidence in the record of heart disease, it will supply that fact by judicial notice, because the preponderance of medical theory holds that the man must have had preexisting heart disease? But this may actually contradict the record, which may contain undisputed testimony that the man was healthy and had no previous history of heart disease.
The legal answer is that the determination of preexisting heart disease is one of medical fact in the particular case, and that the burden of proof of that fact is on the party alleging its existence as part of his case. More frequent use of autopsies, when possible, may be justified in cases in which this issue can be foreseen.
1A Larson, § 38.83(d) at 7-339 (footnote omitted).
In that appellate presented sufficient evidence satisfying all elements necessary to establish the compensability of his claim, and there is no competent, substantial evidence to the contrary supporting the order denying compensability, the order in my judgment should be reversed, and the case remanded for further proceedings consistent with this opinion.
NOTES
[1] We are not unmindful of the cases that hold that a heart attack may be found to be compensable where there is a second separate work-related accident involving physical contact which precipitates the heart attack. See Popiel v. Broward County School Bd., 432 So.2d 1374 (Fla. 1st DCA 1983), rev. denied, 438 So.2d 831 (Fla. 1983), and cases cited therein. The facts in this case do not support a finding of compensability on this basis.
[2] It would appear that the minority and the claimant would provide that the preexisting condition would have to be established much like an affirmative defense. The law provides no support for this proposition.
[3] During his later testimony before the JCC, appellant added certain facts that he had not mentioned during his deposition. He stated that when the student attempted to return to the classroom, claimant barred his reentry at the door, and when the pupil told claimant that he intended to regain admittance, claimant responded, "You are going to have to walk over me if you want to walk in here." According to claimant, the student then said, "Well, if I hit you I am going to get in trouble." Claimant recounted that he and the student were standing by the door and staring at each other, nose to nose. At this point, he suddenly felt the muscles at the back of his neck getting extremely tense and he became very nervous. Claimant nevertheless turned to direct the student down the hallway, and when he placed his hand upon the latter to guide him out, the student suddenly jumped back. Claimant was startled by this reaction, saying he thought he was "going to get slammed." Immediately following this second encounter, he again experienced a strange tenseness coming over him, but the sensation disappeared, and he was able to return the child to the disciplinary room. The remainder of appellant's in-court testimony pertaining to his collapse paralleled his deposition testimony.
[4] A subarachnoid hemorrhage involves the escape of blood from the vessels into the subarachnoid space of the cranium. Dorland's Illustrated Medical Dictionary 750 (27th ed. 1988).
[5] Disparate treatment or test for compensability, depending upon the nature of the injury, is not unusual and has been provided for in a number of situations. See, e.g., § 440.151, Fla. Stat. (occupational diseases); Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA 1990) (repetitive trauma or exposure), rev. denied, 388 So.2d 1119 (Fla. 1980).
[6] "Injury" is defined, in part, as "personal injury or death by accident arising out of and in the course of employment." § 440.20(16), Fla. Stat. (1989).
[7] Professor Larson considers that the unusual-exertion test, which requires that the exertion be compared with the type of work the employee was accustomed to performing, in a case alleging an aggravation of a prior condition, is not the preferred test. He cites as examples two cases applying this test, one approving, and the other disapproving, compensation. In the first case, a clerical employee indulges in the unusual employment effort of shifting a 40-pound stack of folders from a cart to a desk, and suffers a heart attack, which is declared compensable, because the effort was not routine to the type of work the employee customarily performed, notwithstanding that the exertion would generally be regarded as involving an exertion no greater than that commonly undertaken by the employee during his non-employment life. In another case, a worker suffers a heart attack while lifting 200-pound sacks of mail, which for him is routine. Because of the routine nature of the work in the latter case, the claimant is denied compensation, despite the presumption that such exertions would usually be considered far greater than those normally performed by the employee during his non-employment life. 1A Larson, § 38.81 at 7-310.
[8] Although the Victor Wine test was not applied to idiopathic-fall cases, the court had earlier modified its decision in Protectu, which had indicated that the cause of a fall was immaterial in determining the compensability of an injury suffered during a fall, and instead required, as a precondition to approval of compensability, that if the fall was caused by a worker's personal condition, there be evidence of an increased hazard. Foxworth v. Florida Indus. Comm'n, 86 So.2d 147 (Fla. 1955). See also Leon County Sch. Bd. v. Grimes, 548 So.2d 205 (Fla. 1989); Honeywell, Inc. v. Scully, 289 So.2d 393 (Fla. 1974); Southern Convalescent Home v. Wilson, 285 So.2d 404 (Fla. 1973).
[9] Mosca did not, however, as does the majority here, extend the Victor Wine rule to a case in which no evidence was presented that the employee suffered from a prior weakness or disease. The claimant in Mosca had a history of medically controlled hypertension and was diagnosed as having a congenital cerebral aneurysm.
[10] McCook aggravated a preexisting back condition while performing a normal movement during the course of her employment.
[11] Professor Larson appears to propose the legal/medical causation test only with great reluctance and advocates its adoption in those jurisdictions which continue to accept the unusual exertion standard in deciding the compensability of aggravations of preexisting conditions. For example, in another portion of his treatise, he is highly critical of this standard as an unworkable tool for deciding the accidental character of aggravated conditions. 1A Larson, §§ 38.61-.63 at X-XXX-XXX. Among other things, he points out that there is nothing in the accidental-injury concept requiring "that the accidental character of injury must be found in the cause rather than the result," and that "the accidental-result interpretation was well embedded in the phrase `by accident' at the time the phrase was taken over by the states from the British act." Id., § 38.61 at 7-177. It was well settled in England, before the American states had adopted the "injury by accident" terminology of the British act, that a worker's compensation claim was compensable, notwithstanding that the cause was routine and not accidental, on the theory that the effect on the employee was unexpected, and was therefore deemed accidental. 1A Larson, § 38.10 at 7-19-20 & n. 13-14. Moreover, the standard statutory phrase, taken from the original British act, i.e., injury by accident, occurs in the statutes of 25 states, including Florida. Id., § 37.10 at 7-3 & n. 2.
[12] In later explaining what is "not routine" under Victor Wine, the supreme court stated that it meant an activity not routine "to the duty performed by the employee himself rather than by his fellow workers." Richards Dep't Store v. Donin, 365 So.2d 385, 386 (Fla. 1978) (emphasis added).
[13] 1A Larson, § 38.21 at 7-21 & n. 18 & § 39.70 at 7-441 n. 72.
[14] Florida is one of ten jurisdictions out of 36 which requires proof of a legal test of causation in addition to that of medical causation for certain kinds of generalized conditions, i.e., heart cases, thrombosis, back strain, etc.; whereas it is one of five jurisdictions out of 40 demanding the elevated proof standard in cases categorized by Professor Larson as "breakage" cases (cerebral hemorrhage, etc.). See 1A Larson, § 38.71 at X-XXX-XXX.
[15] Compare the provisions of Chapter 17481, Section 2(19), Laws of Florida (1935), defining accident in part as "an unexpected or unusual event, happening suddenly," with those of Section 440.02(1), Florida Statutes (1991), stating that it "means only an unexpected or unusual event or result, happening suddenly." As explained in Victor Wine & Liquor v. Beasley, 141 So.2d 581, 588 (Fla. 1961) (on rehearing), the 1953 Florida Legislature added the term "result" to the definition of accident in order to conform the statutory definition to the interpretation placed upon the act by the Florida Supreme Court in Gray v. Employers Mutual Liability Ins. Co., 64 So.2d 650 (Fla. 1953). Moreover, there is nothing in the above statutory language which requires a construction that there be evidence of an unusual exertion. Compare also Florida's statutory definition of accident with the 1961 amendment to the Montana Revised Codes Annotated, § 92-418 (1947), which defines accident as one happening "from an unexpected cause." 1A Larson, § 37.10 at 7-5. Finally, that portion of the definition of injury, meaning "personal injury or death by accident arising out of and in the course of employment, and such diseases or infection as naturally or unavoidably result from such injury," as provided in Chapter 17481, Section 2(5), Laws of Florida (1935), is identical to the definition of injury found in the current statute. See § 440.02(14), Fla. Stat. (1991).
[16] § 440.02(1), Fla. Stat. (1987).
[17] § 440.49(2), Fla. Stat. (1987).
[18] As the supreme court observed in Tintera v. Armour & Co., 362 So.2d 1344, 1346 (Fla. 1978) (quoting with approval from the order of the Industrial Relations Commission on review):

Victor Wine ... is premised upon recognition of the fact that a great portion of our work force comes upon the work scene with heart defects that would result in heart attacks in any event. Industry should not be made to compensate the employee for these attacks unless it is shown that an identifiable effort over and above that routine for the job produced a strain and exertion that combined with the pre-existing non-disabling heart disease to produce death or disability sooner than it would otherwise have occurred from the normal progression of the disease.
This court gave the following similar reason in McCall v. Dick Burns, Inc., 408 So.2d 787, 790 (Fla. 1st DCA 1982):
The reasoning behind the requirement of both a legal and medical causation analysis in heart cases, as well as in pre-existing disease cases, stems in good part from the view that the natural progress of a disease might precipitate a collapse during working hours. In such cases absent proof of some identifiable effort on the job which within reasonable medical probability can be said to have a causal connection to the collapse, there arises serious doubt that the collapse was either accidental or causally related to the employment. See 1B Larson, Workmen's Compensation Law § 38.83 at 7-257 to 7-261 (1980).
[19] The theoretical basis for approving compensation under such circumstances can be found in the positional-risk doctrine, recognizing that an injury arises out of employment if it would not have occurred but for the fact that the conditions and obligations of the job placed the worker in the position where he or she was injured. 1 Larson, § 6.50 at 3-6; 1A Larson, § 38.83(b) at 7-319 n. 82. Thus, even though the only connection with the employment to the injury was that the obligations of the job placed the employee in the particular place at the time of injury, compensation will nonetheless be approved because the employee was injured by some neutral force, meaning a condition neither personal to the worker, nor otherwise distinctly associated with the employment. 1 Larson, § 6.50 at 3-6-7.
[20] The fact that the claimant below suffered a physical injury shortly following the emotional encounter with the student brings his injury outside the exception provided in section 440.02(1), stating that accidental injury does not include "[a] mental or nervous injury due to fright or excitement only." Cf. City of Holmes Beach v. Grace, 598 So.2d 71 (Fla. 1992). As in Popiel v. Broward County School Board, 432 So.2d 1374, 1376 (Fla. 1st DCA), review denied, 438 So.2d 831 (Fla. 1983), the injury at bar "does not involve a mental or nervous injury, but rather, a very serious physical injury."