DREW, Justice.
The controlling question in this compensation case is whether the heart attack suffered by the bus driver claimant[1] arose out of and in the course of his employment. The deputy found that it did, attributed 70% of the loss to an admittedly pre-existing arteriosclerosis and entered his award for 30% of claimant’s compensation rate, 30% of medical, hospital and medication costs and costs, reserving the question of attorneys’ fees and other proper charges until maximum medical improvement was attained by claimant. The full commission affirmed without comment.
Claimant usually operated buses with automatic transmissions. He had on previous occasions over the years operated buses with manual transmissions.[2] On the day in question he had been called to drive “a couple of hours” because of shortage of help and, although he had worked his full daily schedule the day before, finishing at 11:30 p. m., he agreed to do so and commenced the run in the manual shift *391 bus at 7:45 a. m.[3] Almost immediately after leaving' the terminal, according to claimant, he experienced difficulty with shifting gears. The trouble continued for several blocks when claimant became “dizzy, or paralyzed, blacked out, fainted” and ran the bus into a wall where he was immediately found and removed — unconscious —to a hospital.[4]
The only other evidence in the record concerning the transmission was that of the dispatcher and the mechanic in charge of “preventive maintenance” of the employer. The dispatcher testified that immediately after the accident he drove the bus back to the garage for inspection and that he experienced no difficulty in shifting the gears through all speeds. The other witness testified that on the following day he checked the bus out “ * * * the clutch, and shifting, and drive it around and drive it into the pit and check [ed] it over” ; that he had no difficulty shifting gears. He said, “when I road tested it I bad no trouble with it”. There is no evidence — except claimant’s — to the contrary.
“ * * * When disabling heart attacks are involved and where such heart conditions are precipitated by work-connected exertion affecting a pre-existing non-disabling heart disease, said injuries are compensable only if the employee was at the time subject to unusual strain or over-exertion not routine to the type of work he was accustomed to performing.”
Great reliance must in each case of this nature be given the deputy’s findings of fact when supported by competent, substantial evidence. But in this case the problem is simplified by the fact that here the evidence of claimant himself establishes the keystone fact that the activity engaged in by claimant when- the event for which compensation is sought took place, was usual and the alleged overexertion was routine to the employment. Such being the facts, the injury is not compensable under the act as construed by this Court.[5] The claimant had operated buses for 19 years and, we can imagine nothing more common to a bus driver’s employment than occasional difficulty with shifting gears. It might be said that such events — when and if they occurred — were inherent in the employment. Moreover it seems quite clear to us that verity may be attributed to not *392 only claimant’s testimony as to the difficulty of shifting gears but also the testimony of the dispatcher and the preventive maintenance foreman by concluding that the heart attack suffered by claimant produced the difficulty in shifting gears rather than —as claimant claims — the gear shifting difficulty produced the attack. It is simply a case where the evidence produced does not as a matter of law measure up to the standard of “competent and substantial.”[6]
Certiorari is granted, the order of the full commission is quashed and the cause remanded with directions to quash the deputy’s order and direct dismissal of the claim.
It is so ordered.
CALDWELL, C. J., and THOMAS, ROBERTS and THORNAL, JJ., concur.

. Claimant had been a bus driver for more than 19 years when he suffered the heart attack for which compensation is sought.

. “Q Had you, during the nineteen- years that you had been with the bus company as a driver, had you ever experienced the same type of difficulty that you had this morning on May 21st?
I’m talking about changing gear on the buses — changing the gear on a manual bus?
“A Yes, I had, several times, over a period of years. When you take the bus out in the morning, they appear to be OK, and they break down, something goes wrong — ”

. His regular bus duties as driver was on a vehicle with automatic transmission.

. The following is claimant’s account of these events:
“To another stop light, and I made it there, on the corner of North West 1st Avenue and 4th Street, I went through that light on green; the light was green on that corner. I went from there to the corner of North West 1st and Broward and during that distance I was trying to get the bus in high gear; I guess that’s four blocks in there. It still (inaudible) so I reached Broward and 1st and the light was red, and I stopped for the light to change. I was exhausted, I was pretty well exhausted; it was extra warm that morning and the perspiration was rolling off my forehead and when this light changed at 1st and Broward, I threw it in low gear and pulled under the light and made a left hand turn; I completed my turn and at that time I was making a movement to straighten my bus up; my intentions at the time was that I was going to make it to the Park, where the terminal is, and call the garage and ask them to send me another bus. But I made this turn at the light and I became dizzy — I had a dizzy spell — and it seemed to paralyze me — it hit me sudden — it just paralyzed', me. I realized what I wanted to do, do-what I bad to do. But I was paralyzed. I couldn’t manage to do what I wanted to do.
“Prom that instant I became dizzy and" paralyzed I (inaudible) and fell slumped over on the wheel. Prom that point on I didn’t -know anything until after the bus had hit something. At that time, I don’t know what. When I vaguely came to and realized that a lady had got on the bus, why, she had my head on her shoulder and was calling for help. I vaguely remember a police officer getting on the bus. I vaguely remember an ambulance. Then they took me-to a hospital.”

.The rule was laid down in Victor Wine & Liquor, Inc. v. Beasley, Fla.1961, 141 So.2d 581, as follows:

. See Simmons v. Stanley, Fla.1967, 197 So.2d 514, a case where the basic factual situation is very similar.