490 So.2d 1367 (1986)
Roger SKINNER, Deceased, and Joan Skinner, Widow, and Stephen Skinner, Son, Appellants,
v.
FIRST FLORIDA BUILDING CORPORATION and U.S. Fidelity & Guaranty Company, Appellees.
No. BJ-490.
District Court of Appeal of Florida, First District.
July 10, 1986.
George J. Adler, of George J. Adler, P.A., Orlando, for appellants.
John R. Gierach, of Gierach and Ewald, P.A., Orlando, for appellees.
WIGGINTON, Judge.
The claimants appeal a workers' compensation order denying their claim for benefits on the basis that the accident causing Roger Skinner's death did not arise out of and in the course and scope of his employment. The novel issue presented herein requires the application of the Victor Wine rule, Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1962), to circumstances involving the death of a newlyhired employee. We affirm the denial of the claim.
Specifically, the deputy commissioner found that although Roger Skinner sustained a rupture of a "congenital cerebral (berry) aneurysm in July, 1984, ultimately resulting in his death," he was subjected "to neither unusual strain or over-exertion under the Victor Wine rule, during the performance of his employment duties with employer herein." Significantly, the deputy found that Mr. Skinner "was not at anytime subject to unusual strain or over-exertion not routine to this employee's regular job duties." In challenging that finding, claimants argue that the deputy has misapplied the law by emphasizing what is *1368 routine to the job, as opposed to what is routine to the employee.
In the instant case, the facts show that Mr. Skinner was a carpenter for approximately twenty-one years, or until 1982, when carpentry jobs in Illinois became scarce. He was unable to procure carpentry jobs between 1982 and 1984, and during that period worked only two months saddling horses on the weekends. Thus, during the two years prior to his job with the employer, Mr. Skinner lived a sedentary life.
In 1981, Mr. Skinner was diagnosed as having high blood pressure, which he thereafter controlled with medication. However, other than his high blood pressure, Mr. Skinner was experiencing no physical problems when he looked for work upon arrival in Florida in June of 1984. While searching for work, Mr. Skinner concentrated exclusively on carpentry jobs, and the first job he procured was with First Florida Building Corporation, the employer herein, as a carpenter.
Mr. Skinner was instructed to report for work at approximately 7:00 a.m. on July 4, 1984. At around 8:15 a.m., he was observed with a hammer in his hand hitting a two-by-four stake in the ground from side to side to loosen it. The ground on which he was working was sand.
Within moments from when Mr. Skinner began laboring, he was observed to come to a standing position, and then to fall backwards to the ground. He was taken by ambulance to a hospital, and subsequently died from a ruptured cerebral berry aneurysm on July 22, 1984. There was testimony to the effect that Mr. Skinner sustained no trauma to his head as a result of his fall, and that prior to his fall he had appeared ill.
The deputy approached the issue of compensability with an analysis centering on whether Mr. Skinner had engaged in over-exertion "unusual or non-routine in reference to this employee's regular job duties." In concluding that he had not, the deputy found that Mr. Skinner had been hired as a carpenter and was performing a task "very usual and routine to the position for which he had been hired" at the time of his accident.
In so holding, the deputy analogized this case to the circumstances in Fort Lauderdale Transit Lines v. Bass, 206 So.2d 390 (Fla. 1968), and distinguished the case of Armour and Company v. Cannon, 384 So.2d 264 (Fla. 1st DCA 1980), relied on by claimants. Claimants now argue that Bass is not analogous since it did not utilize the "clear-cut interpretation" of Victor Wine that was subsequently adopted by the Industrial Relations Commission in Ward v. Regency Bowling Products, IRC Order 2-2969 (May 18, 1976), cert. denied, 339 So.2d 1173 (Fla. 1976). Claimants submit that the analysis used in the denial of benefits in Bass was based on what was "routine to the employment," whereas the Ward interpretation was founded on an analysis of what was routine to the type of work the claimant was accustomed to performing.
Relying on that analysis, claimants argued below and argue here that since Mr. Skinner had not performed carpentry work, or any physical labor, for approximately two and one-half years prior to his being hired by First Florida Building Corporation, "the act of swinging a hammer for approximately 15 minutes on his first day of work in the warm Florida climate was not routine" to him. To the contrary, the deputy held that Mr. Skinner's job "was that of a carpenter and the comparison analysis for usualness must be made in that context and not in the context of his apparent voluntary lack of employment prior to becoming employed by employer herein." We agree with the deputy and hold that his analysis is in line with Ward, as well as with Bass and Cannon.
The rule was laid down in Victor Wine, as follows:
When disabling heart attacks are involved and where such heart conditions are precipitated by work-connected exertion affecting a pre-existing non-disabling heart disease, said injuries are compensable only if the employee was at the time subject to unusual strain or over-exertion *1369 not routine to the type of work he was accustomed to performing.

141 So.2d at 588-589 (emphasis added.)[1] Citing that rule, the supreme court in Bass, in finding the injury to be noncompensable, found that the activity engaged in by the claimant, when the event for which compensation was sought took place, "was usual and the alleged overexertion was routine to the employment." 206 So.2d 391. The claimant in Bass sustained a heart attack while driving a manual transmission bus. Although he had not operated a manual transmission for an extended period of time, he had operated such a bus in the past and had experienced similar difficulty with shifting the gears. The court noted that the claimant had operated buses for nineteen years, and concluded that it could imagine "nothing more common to a bus driver's employment than occasional difficulty with shifting gears." Id. (emphasis added.) The court opined that "such events  when and if they occurred  were inherent in the employment." Id. (emphasis added.)
Later, in Ward, the Industrial Relations Commission reevaluated the Victor Wine rule in regard to the "`not routine to the job' versus `not routine to the person' argument" engendered by that rule. It concluded that the supreme court, "in adding `he was accustomed to performing', was saying that the standard to be applied is whether the work was unusual to the employee."
Although not specifically cited, the Ward "interpretation" was clearly embodied in this Court's decision in Armour and Company v. Cannon. In Cannon, it was found that after over two years as a forklift operator, the claimant was given new job duties involving much more strenuous labor. After several weeks of performing that activity, the claimant ultimately suffered a heart attack. We affirmed the finding of compensability, as the heart attack was the result of a specifically identifiable effort not routine to the claimant's original job.
Assuming that the supreme court in Bass properly interpreted its own rule set forth in Victor Wine, we see Bass and Cannon as merely residing at opposite ends of the factual spectrum, but clearly in line with the Ward "interpretation." Considering all three cases in conjunction, the analysis is not one solely predicated on the broad question of what was routine to the claimant; rather, that inquiry must necessarily be circumscribed by a consideration of what was routine to the job the claimant was accustomed to performing. Without that limitation, the Victor Wine issue arising in the case of a new employee would require the unwieldy chore of determining at what point in time the job became routine, beyond which point it could then be held that an "internal failure" injury sustained on that job would not be caused by an unusual strain or by overexertion.
In the instant case, Mr. Skinner was hired as a carpenter, and the work he was performing was routine to the job he was hired to perform. It matters not that he had been on the job for only a matter of minutes, or that he had not worked as a carpenter for over two years prior to his being hired. What matters is that the accident occurred while Mr. Skinner was engaged in an activity routine to his job. That analysis is the thrust of Ward, as well as of Bass and Cannon.
Accordingly, the deputy commissioner's order finding that Mr. Skinner did not sustain an accident arising out of and in the course and scope of his employment is AFFIRMED.
SMITH and JOANOS, JJ., concur.
NOTES
[1] In Richard E. Mosca & Co., Inc. v. Mosca, 362 So.2d 1340 (Fla. 1978), the supreme court held that the Victor Wine rule should be extended to other internal failures of the cardiovascular system. In Mosca, the claimant also suffered a ruptured cerebral aneurysm.