629 So.2d 862 (1993)
PUBLIX SUPER MARKETS, INC. and Hartford Insurance, Appellants,
v.
Arleen J. McGUIRE, Appellee.
No. 92-884.
District Court of Appeal of Florida, First District.
October 12, 1993.
Rehearing Denied December 9, 1993.
Lynn H. Groseclose, of Lane, Trohn, Clarke, Bertrand & Williams, P.A., Bradenton, for appellants.
Edward S. Eno, of Tanney, Forde, Donahey, Eno & Tanney, Clearwater, for appellee.
EN BANC
MICKLE, Judge.
The Employer/Carrier ("E/C") appeal a final order of the Judge of Compensation Claims ("JCC") finding a compensable accident and requiring the E/C to provide Arleen J. McGuire ("Claimant") with 1) temporary total benefits, to be paid in a lump sum, 2) unpaid medical expenses relating to Claimant's coronary artery spasm, and 3) remedial *863 medical care and attention, and 4) requiring the E/C to reimburse Blue Cross and Blue Shield and Claimant for unpaid as well as paid medical bills. The JCC made no finding that Claimant "was subject to an unusual strain or overexertion resulting from a specifically identified effort not routine to the type of work [s]he was accustomed to performing at the time" she suffered the coronary artery spasm. Richard E. Mosca & Co., Inc. v. Mosca, 362 So.2d 1340, 1342 (Fla. 1978). We conclude that the JCC erred, as a matter of law, in failing to apply the test from Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1961) and Mosca. Accordingly, we must reverse and remand for further proceedings consistent with our holding. See Zundell v. Dade Co. Sch. Bd. and Gallagher Bassett Serv., Inc., 609 So.2d 1367 (Fla. 1st DCA 1992) (en banc) (affirming order denying claim for benefits, where intracerebral subarachnoid hemorrhage suffered by claimant/teacher during confrontation with student was not a compensable injury under Victor Wine and Mosca).
At issue is the applicability, to the instant facts, of the following rule promulgated by the Florida Supreme Court in Victor Wine, 141 So.2d at 588-89:
[W]e adopt the following rule for heart cases: When disabling heart attacks are involved and where such heart conditions are precipitated by work-connected exertion affecting a pre-existing non-disabling heart disease, said injuries are compensable only if the employee was at the time subject to unusual strain or over-exertion not routine to the type of work he was accustomed to performing.
In Mosca, the supreme court extended the applicability of this stricter test of compensability to "other internal failures of the cardiovascular system." 362 So.2d at 1341; University of Florida v. Massie, 602 So.2d 516, 521 (Fla. 1992). In Zundell, which was decided subsequent to the date of the hearing in the instant case, we rejected the principle that "a pre-existing condition is a necessary element of proof" before the rigorous test from Victor Wine and Mosca can be applied. 609 So.2d at 1370. See Zundell, 609 So.2d at 1373 (Webster, J., concurring and dissenting in part). The case sub judice requires us to determine whether, as a matter of law, a coronary artery spasm is an "internal failure of the cardiovascular system" as contemplated in Mosca, so that the Victor Wine test applies.
At the time of the injury, Claimant was a five-year employee of Publix Super Markets, Inc., who worked part-time as a cashier in the Dunedin store. Additionally, she was employed by the City of Clearwater as a guard at a school crossing. Prior to the injury, Claimant was in good health but had a history of high blood pressure controlled by medication.
On October 26, 1989, Claimant reported to work at Publix around 4:00 P.M. and went directly to her cash register. Soon she observed Frank Kapocsi, a Publix district manager, standing in front of the store. Claimant testified she began to worry that Kapocsi was there in response to a letter Claimant had written to Publix upper management in Lakeland complaining that she had not received a pay raise to which she felt entitled. Shortly after noticing Kapocsi, Claimant received a telephone call at her register requesting her to report to the cash office at the front of the store. Kapocsi was waiting for her in the office, and shortly after the meeting began, Kapocsi asked the store manager, Mr. Myers, to join them.
The meeting was held in a small, 10 x 10-foot room and lasted about 30 minutes, during which time Claimant remained standing. Claimant testified she was nervous and upset, and that Kapocsi said her letter did not look good for him. About five minutes after she was summoned to the room, Claimant began experiencing chest pains that continued for the duration of the meeting. Claimant was afraid she would be fired because she had bypassed Kapocsi by writing the letter of complaint without first communicating her grievances to the local management.
Certain facts about the meeting are disputed. Claimant testified that during the meeting, she informed Kapocsi and Myers that she was having chest pains and felt bad. Judging from the tone of his voice, Claimant believed Kapocsi was angry. Kapocsi, however, *864 testified that Claimant did not mention chest pains then. According to Kapocsi, other than exhibiting some ordinary nervousness, Claimant conducted herself well during the meeting. He recalled the atmosphere was cordial, and he testified the discussion concerned payroll, pay scale, and Myers' reasons for not giving Claimant a raise. Kapocsi explained the reason for not granting a pay raise then was that Claimant was inflexible in arranging a work schedule. Although Kapocsi acknowledged he would prefer employees to air complaints initially with their immediate supervisors, he said he was not upset with Claimant for writing the Lakeland office. As district manager, he responds frequently to similar concerns of employees. The JCC rejected Kapocsi's testimony that the atmosphere in the meeting was cordial, and we find competent substantial evidence to support the finding.
At the conclusion of the meeting, Claimant was permitted to return to her cash register. When she reported feeling pain and discomfort, Claimant was sent to the employees' room to sit down. Her son was called to take her to the hospital after several employees opined that Claimant might be having a heart attack.
An internal medicine specialist, Dr. Naman, treated her in the emergency room. Claimant, 57 years old, described the development of chest pain of 8 on a 1-to-10 scale, radiating to her back. She gave the doctor a history of the onset of pain during a heated argument with her supervisor at work concerning a pay raise. By deposition, Dr. Naman testified that the results of blood work and repeated cardiograms revealed the presence of enzymes indicating heart damage. On the basis of the blood work, Dr. Naman initially thought Claimant had suffered a heart attack, a condition that he defined as the death of a muscle in the heart. A subsequent catheterization revealed 30-50% blockage of the left anterior descending, and 50% blockage of the circumflex, arteries. Such blockages, normally caused by plaque, were deemed mild to moderate in Claimant. The catheterization did not reveal any complete blockage. The doctor opined that Claimant would not have much potential for a heart attack due to the extent of the blockage alone. On the basis of the catheterization and blood work, Dr. Naman said that at some point, Claimant probably had sustained a coronary artery spasm. His opinion was that her coronary artery spasm was not caused by arterial blockage or plaque. Based on the history provided by Claimant, Dr. Naman opined that the most likely reason for, or event most likely precipitating, the coronary artery spasm was the emotional episode at the meeting.
On the issue of causation, the JCC stated as follows:
The logical cause doctrine in this case supports the claimant's position that the coronary artery spasm arose out of and was in the course of the claimant's employment with Publix because of the fact that the chest pains started during the meeting with Mr. Kapocsi and Mr. Myers on the store premises and cotinued [sic] without interruption until the hospitalization, and further, that the heart catheterization and Dr. Naman's testimony showed that the claimant would not have had a heart attack based or caused by blockage and that the most likely cause of the claimant's problem was a coronary artery spasm caused by the incident at work. There was no contrary evidence submitted [by] the employer/carrier. Therefore, the claimant's testimony and that of Dr. Naman establish within a reasonable degree of medical probability, the cause of the coronary artery spasm.
As the JCC's determination of causation is supported by competent substantial evidence in the record, that finding will not be disturbed on appeal. Dixie Lime & Stone Co. v. Lott, 196 So.2d 422, 423 (Fla. 1967).
The JCC having found that Claimant had suffered a coronary artery spasm, the two key issues at hearing were 1) whether Claimant sustained an accident or disease arising out of and in the course of her employment, and 2) what was the appropriate rate for average weekly wage and compensation, in view of Claimant's working two jobs on the date of her injury. Only the first issue was raised on appeal.
Claimant maintained, and the JCC found, that under Florida law, "coronary artery *865 spasms have historically been treated differently from heart attacks and have been found to be compensable, even if there is no unusual physical exertion or associated accident." The JCC based that determination on our decision in Citrus Central, Inc. v. Gardner, 466 So.2d 369 (Fla. 1st DCA 1985). The claimant, Gardner, usually worked as a fork-lift operator at a sheetmetal fabrication company, but several times a month was required to relieve production line workers banding the finished sheetmetal. While engaged in the latter activity, he experienced sharp pains and was admitted to the emergency room. The deputy commissioner relied on a physician's deposition testimony that Gardner had suffered a coronary artery spasm while engaged in non-routine work duties, and benefits were awarded. Id. at 371.
The E/C in Gardner challenged the finding of a compensable injury, but that portion of the JCC's order was affirmed. Id. at 370. However, in language that goes to the heart of the instant controversy, we stated:
The deputy commissioner's finding that Gardner suffered a coronary artery spasm while engaged in non-routine duties suggests a use of the test pronounced in [Victor Wine] that the claimant be subject to unusual strain or over-exertion not routine to his work before the heart attack may be found compensable. Since Gardner suffered a coronary artery spasm, not a heart attack, there is no requirement of non-routine physical exertion. There is also no requirement it be shown that Gardner's injury was "preceded by some incident, such as a slip, fall or blow." Victor Wine, at 588.
Id. Claimant argues on appeal that Gardner is dispositive and requires an affirmance of the final order finding compensability without applying the stricter test promulgated in Victor Wine. We have carefully reviewed Gardner and the key decisions evolving from Victor Wine and Mosca. For reasons stated infra, we are compelled to disagree with Claimant's position.
Our research indicates that no other decision has cited Gardner for the proposition argued by Claimant, nor have we found another "coronary artery spasm" decision to support Claimant's position. Mosca is neither cited nor discussed in Gardner, and the evolving decisional law subsequent to Gardner convinces us that the Florida Supreme Court intended a broader application of the more rigorous Victor Wine burden of proof to cases involving coronary artery spasms. See Zundell.
Numerous decisions of the supreme court as well as our own court have demonstrated the continuing viability of the Victor Wine test not only in cases involving heart attacks, see City of Miami v. Rosenberg, 396 So.2d 163, 164-65 (Fla. 1981) (acute myocardial infarction with acute atrial fibrillation and left bundle branch block); Richards Dep't Store v. Donin, 365 So.2d 385 (Fla. 1978) (subendocardial-myocardial infarction); Skinner v. First Florida Bldg. Corp., 490 So.2d 1367 (Fla. 1st DCA 1986) (affirming order denying claim based on rupture of congenital cerebral (berry) aneurysm, absent showing required under Victor Wine), but also in cases where the claimant sustained "other internal failures of the cardiovascular system." Mosca, 362 So.2d at 1341 (applying Victor Wine test and finding ruptured congenital cerebral aneurysm not compensable in absence of showing of unusual strain or overexertion); Zundell, 609 So.2d at 1367; Diaz v. City of Miami, 427 So.2d 1085 (Fla. 1st DCA 1983) (absent evidence of unusual strain or overexertion, order was affirmed, denying benefits to claimant with labile hypertension and premature heartbeats, who began suffering from chest pains, shortness of breath, and left arm pain while at home). Cf. Wolbert, Saxon & Middleton v. Warren, 444 So.2d 511, 513-14 (Fla. 1st DCA 1984) (reversing award of benefits to claimant suffering from chronic asthma attacks brought on by "an internal failure of the pulmonary system," absent any precipitating work-related physical condition or other unusual physical effort or event). Emotional strain alone, independent of any activity evincing unusual physical strain or overexertion, is insufficient to meet the test of compensability under Victor Wine. See Mosca, 362 So.2d at 1342; Hicks v. Jockey Club of Ocala and CIGNA/INA/Aetna, 557 So.2d 117 (Fla. 1st DCA), rev. den., 569 So.2d 1279 *866 (Fla. 1990); Hammersmith v. Zanfardino, 425 So.2d 80, 81 (Fla. 1st DCA 1982), rev. den., 436 So.2d 101 (Fla. 1983).
To determine the proper scope of Mosca, we note that "cardiovascular" pertains to heart and blood vessels. An artery is "a vessel through which the blood passes away from the heart to the various parts of the body." Dorland's Illustrated Medical Dictionary 138 & 275 (27th ed. 1988). Claimant's physician described a coronary artery spasm as "for all practical purposes [a] complete blockage of that artery." The hospital discharge summary states that "the patient has had myocardial injury secondary to coronary artery spasms, obtained a[t] the time of injury." Our thorough review of the medical testimony in the case at bar, and our interpretation of the reasoning underlying Mosca and its progeny, lead us to the inescapable conclusion that a coronary artery spasm is an internal failure of the cardiovascular system. Accordingly, we must recede from Gardner to the extent that it excludes coronary artery spasms from "other internal failures of the cardiovascular system." Mosca, 362 So.2d at 1341. Because the JCC erred, as a matter of law, in failing to apply the Victor Wine and Mosca test to determine whether the facts surrounding Claimant's injury prove compensability, we must reverse and remand the cause for further proceedings consistent herewith.
As in Zundell, Claimant likewise had manifested "no preexisting non-disabling heart disease" such as was contemplated in the previously quoted language from Victor Wine, 141 So.2d at 589. Because we can foresee the potentially broad ramifications of this issue, we certify the following question to be of great public importance:
WHETHER THE "RULE FOR HEART CASES" ANNOUNCED IN VICTOR WINE & LIQUOR, INC. V. BEASLEY AND LATER EXTENDED TO "OTHER INTERNAL FAILURES OF THE CARDIOVASCULAR SYSTEM" BY RICHARD E. MOSCA & CO., V. MOSCA IS APPLICABLE TO CASES IN WHICH THERE IS NO EVIDENCE THAT THE CLAIMANT SUFFERED FROM A "PRE-EXISTING NON-DISABLING" CARDIOVASCULAR DEFECT, FAILURE, OR DISEASE, THEREBY REQUIRING PROOF THAT, AT THE TIME OF THE INJURY, A CLAIMANT WAS "SUBJECT TO UNUSUAL STRAIN OR OVER-EXERTION NOT ROUTINE TO THE TYPE OF WORK" A CLAIMANT WAS ACCUSTOMED TO PERFORMING.
REVERSED and REMANDED for further proceedings.
BOOTH, SMITH, MINER, ALLEN, WOLF, KAHN and LAWRENCE, JJ., concur.
WEBSTER, J., specially concurs with written opinion in which BARFIELD, J., concurs.
JOANOS, J., dissents with written opinion in which ZEHMER, C.J., and ERVIN, J., concur.
ZEHMER, C.J., dissents with written opinion in which ERVIN, J., concurs.
WEBSTER, Judge, specially concurring.
For the reasons expressed in my separate opinion in Zundell v. Dade County School Board, 609 So.2d 1367, 1371 (Fla. 1st DCA 1992) (en banc), I continue to believe that the majority opinion in Zundell is incorrect. However, I recognize that the doctrine of stare decisis mandates that we follow Zundell until it is overruled, either by this court, sitting en banc, or by the supreme court. Accordingly, I concur.
JOANOS, Judge, dissenting.
The key issue to be decided on this appeal is: Whether the determination that Claimant sustained an accident or disease arising out of and in the course of her employment can be affirmed?
This should be an easy affirmance. After all, the opinion of the medical expert, Dr. Naman, based upon the history and evidence before him, was that the most likely reason for, or the event most likely precipitating, the coronary artery spasm was the emotional episode which occurred at the work-related *867 meeting. That should be enough to affirm on the issue of causation.
Unfortunately, we cannot look at this as we would other cases involving injuries arising out of work-related incidents. A special rule of law has evolved in regard to certain kinds of job-related ailments.
In Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1961), the Florida Supreme Court set out a rule of law for heart attack cases. That Court determined that a heart attack suffered at work with its accustomed physical exertions was not a compensable injury "by accident." In order to be compensable a heart attack must have resulted from overexertion uncommon to the work. This "court rule" was crafted by the Court in order to make the point that workers' compensation was not health insurance. The Court through Justice Roberts further indicated that workers' compensation did not cover "disease or physical ailment not produced by industry." In establishing the rule, the Court apparently made a determination that heart attacks were not caused by "industry" unless they were brought about by an event or events of overexertion uncommon to the work.
In Richard E. Mosca & Co., Inc. v. Mosca, 362 So.2d 1340 (Fla. 1978), the Victor Wine rule in heart cases was made applicable to "other internal failures of the cardiovascular system." The particular "internal failure of the cardiovascular system" involved in the Mosca case was a "ruptured aneurysm."
The Victor Wine rule has perplexed me for a long time. I cannot understand why the question of compensability for a heart attack should revolve around whether or not there was an "uncommon overexertion." The question should be simply: "Was it caused by a work event?" I would further suggest that the answer should also be determined by the best available, most current medical evidence and opinion, rather than by a court rule that may or may not have relevancy to a given situation. Despite my concerns, I am aware that our Court is bound to follow the law as set forth by the Florida Supreme Court. Consequently, we must apply the Victor Wine rule as expanded by Mosca.
Nevertheless, I disagree with the majority opinion in two ways. First, implicit in the majority opinion is the interpretation that the Mosca opinion extended the Victor Wine rule to all internal failures of the cardiovascular system. My view is that the Mosca opinion held only that the Victor Wine rule was applicable to some failures of the cardiovascular system, including, specifically, the one involved in that case, a ruptured aneurysm. Mosca involved a medical situation described by the appellant as "a congenital weakness in an artery which suddenly burst" and was "synonymous with heart cases." It is my view that the Victor Wine test was meant by the Florida Supreme Court to apply only to situations like heart attacks, where it is extremely difficult to ascertain whether the ailment just manifested itself at work when, in fact, it had reached that point because of years of development unrelated to work, or whether the condition was primarily caused by a work event. If the ailment was clearly caused by the work event, then Victor Wine should not be applicable. I cannot accept the notion that the Mosca Court intended to take a rule crafted to meet an ailment stemming from a congenital weakness and apply it to all failures of the cardiovascular system.
Second, because of the evidence involved in the case before us, I disagree that a finding was required that the ailment suffered was an "internal failure" of the cardiovascular system. Dr. Naman's opinion was that the coronary artery spasm was not caused by arterial blockage or plaque, but most likely was caused by the emotional episode at the meeting. This was not necessarily a situation where a preexisting weakness just gave way or "failed" because of internal deficiencies. It is reasonable to conclude that it was legally caused by external forces. In addition, we should not, as a matter of law, determine whether a particular medical condition constitutes an internal failure. That is essentially a decision to be made based upon the evidence and expert medical opinion presented. I would note that in Zundell v. Dade County School Board, 609 So.2d 1367 (Fla. 1st DCA 1992), the question of how an ailment is determined to be an internal failure was not at issue. The intracerebral subarachnoid *868 hemorrhage involved was assumed to be an internal failure. The Zundell opinion, therefore, does not require the result reached by the majority.
I, therefore, dissent from the majority opinion.
Further, if they are to review this case, I would rather the Florida Supreme Court consider in total the court-made rules set out in the Victor Wine and Mosca opinions, rather than answer the question certified in the majority opinion. Perhaps such a review may produce a more relevant method of ascertaining what ailments are compensable under our law.
ZEHMER, Chief Judge (dissenting).
This case illustrates why courts should avoid fashioning fixed rules of law to adjudicate disputed issues of medical facts. Here, we have a clear case of uncontradicted medical evidence establishing that the most probable, if not the only, cause of Claimant's coronary artery spasm and resulting injury was the physical stress on her cardiovascular system resulting from a confrontational episode with her supervisor at work. No statutory provision in chapter 440 expressly excludes compensability of a diagnosed physical injury shown to have been caused by physical and emotional stress flowing from the occurrence of an event or condition at the claimant's employment. No medical evidence presented in this case tends to prove that claimant's injury was caused by any condition, activity or event unrelated to this episode during her employment; there is no evidence that the injury was caused solely by a pre-existing medical condition of her cardiovascular system. Therefore, the ruling by the judge of compensation claims that Claimant's injury arose out of and in the course of her employment is unquestionably supported by the record, is consistent with the clear language of the workers' compensation statute, and should be affirmed.
I know of no statutory provision in chapter 440 that empowers the courts to fashion a rule of substantive law that imposes, as a predicate to recovering benefits under the workers' compensation statute, additional factual elements that, in the court's opinion, should be deemed necessary to establish the existence of causation between the alleged industrial injury and the claimant's employment. This is particularly true when, as in this case, such additional elements operate to deprive a claimant of benefits for presumed lack of causation despite undisputed proof to the contrary consisting of competent, substantial medical evidence that the coronary artery spasm was caused in fact by the described event that occurred in the course of and as a consequence of the claimant's employment.
The legal requirement of causation between an accidental injury sustained by an employee and the employee's employment derives from statutory language that the injury must be one "arising out of and in the course of employment." § 440.02(17), Fla. Stat. (1991). Whether the required causation exists in accordance with this statutory concept is essentially a factual issue that must be decided by the trier of fact based on competent, substantial evidence in the record, not an arbitrary assumption of fact cast as a rule of law.
In writing this dissent, it is not my purpose to argue that Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1961), was wrongly decided. The rationale of that decision is reasonable so long as it is construed and applied in light of the material facts recited in the opinion. I acknowledge that the rule therein announced can serve as a basis for denying an award of benefits provided that rule is applied only when: (1) the evidence establishes that the claimant was suffering from a pre-existing, non-disabling disease or condition of the cardiovascular system that could have caused the alleged injury, and (2) there is no competent, substantial evidence that the injury to the employee's cardiovascular system was caused or aggravated by an event or condition arising out of the claimant's employment.
In Victor Wine, the evidence showed that the employee suffered from a pre-existing medical condition that, while nondisabling, could well have been the cause of the claimant's heart attack entirely independently of any activity or occurrence arising out of the *869 claimant's employment. In fashioning the rule requiring that an internal cardiovascular injury (heart attack) be precipitated by work-connected exertion due to unusual strain or overexertion resulting from a specifically identified effort not routine to the type of work the claimant was accustomed to performing, the supreme court conceived that proof of such additional facts was necessary to avoid imposing liability for benefits on the employer and carrier when the principal or sole cause of the heart attack was the claimant's pre-existing but non-disabling medical condition. Hence, the obvious purpose underlying the rule as originally fashioned in Victor Wine was to prevent the award of workers' compensation benefits for injuries attributable to the claimant's pre-existing condition when there has been no demonstrated connection between the occurrence of cardiovascular injury and the claimant's employment apart from the fact that the heart attack occurred while the claimant was at work. That is precisely why the supreme court, in stating the rule, included qualifying language that limits its application to cases where "disabling heart attacks are involved and where such heart attacks are precipitated by work-connected exertion affecting a pre-existing non-disabling heart disease. ..." [Emphasis added.] 141 So.2d at 588-89.
Thus, Victor Wine should not be read as precluding a claimant from establishing compensability of an internal cardiovascular injury by presenting competent medical evidence of a precise causal relationship between a heart attack or other internal cardiovascular system failure and the claimant's employment. In its original opinion, the supreme court quashed the commission's decision and ordered the claim dismissed; but on rehearing granted, the court receded from that decision and recognized that:
The Deputy Commissioner found that the exertion of the claimant in loading the truck precipitated his disabling heart attack sooner than it would otherwise have occurred through normal progress of his pre-existing disease, coronary atherosclerosis, but did not apportion the award according to the contribution to the disability made by the pre-existing disease and that attributable to the work-connected injury, even though the medical testimony showed that the pre-existing disease contributed to the disabling heart attack.
141 So.2d at 589. No mention is made that this exertion was unusual. Nevertheless, the court declined to deny all benefits in that case. After noting that the statute "excludes any recovery for disability attributable in fact to the pre-existing condition and limits recovery solely to injury from aggravation" and "requires apportionment of an award of compensation for a disabling heart attack suffered during the course of employment and resulting from the work-connected exertion," the court remanded for further proceedings in respect to apportionment. Therefore, it is clear that the court allowed competent medical testimony to be used to establish the fact of causation at least in part.
The supreme court's decision in Richard E. Mosca & Co., Inc. v. Mosca, 362 So.2d 1340 (Fla. 1978), came some 16 years after the Victor Wine decision. In Mosca, the court applied the Victor Wine rule to a ruptured cerebral aneurysm that occurred during a sales meeting that "produced a tense atmosphere." The court held as a matter of law that the emotional strain suffered by claimant at that time was not the result of an unusual strain or overexertion. The court reached this result despite competent medical evidence, accepted by the trier of fact, "that the rupture could have occurred at some other time but the tension and pressure wrought by claimant's business problems, combined with the emotional stress and strain of the October 2nd meeting, caused an elevation of claimant's blood pressure which resulted in the rupture of the aneurysm."[1] The court concluded, without referring to any medical evidence to support its statements, that:

*870 [T]he same rationale for requiring a stricter rule in heart cases is also applicable to other internal failures of the cardiovascular system. This means that, before a ruptured aneurysm can qualify as an accident arising out of employment, the rupture must be shown to have been caused by an unusual strain or overexertion by the claimant resulting from a specifically identifiable effort by him not routine to the type of work he is accustomed to performing.
362 So.2d at 1342. Unlike its decision in Victor Wine in which the court gave deference to the medical evidence on the fact of causation, in Mosca the court proceeded to reject altogether the medical evidence of causation accepted by the trier of fact; it denied benefits as a matter of law because there was no unusual strain or overexertion found in the appealed order. Obviously, the rule in Mosca is founded on the court's assumption of medical fact rather than competent, substantial evidence of medical causation, because the opinion in Mosca explained:
We have had a number of "heart" cases in which we determined what was or what was not an unusual and non-routine strain or exertion within the definition of Victor Wine. These decisions have involved either strain or exertion in concert with emotional strain, but in no case have we held emotional strain alone to be sufficient. Emotional strain is too elusive a factor to be utilized, independent of any physical activity, in determining whether there is a causal connection between a heart attack or other internal failure of the cardiovascular system and the claimant's employment.

Id. at 1342. (Emphasis added.) After discussing the holdings in a number of cases, the court reversed for failure to prove unusual strain or overexertion, quashed the order granting benefits, and ordered the claim dismissed.
With all due respect, this decision was and remains an incorrect application of the rule in Victor Wine. The decision went much further than did the court in Victor Wine by rejecting completely competent medical evidence of a causal relationship and ordering the claim dismissed rather than remanding for apportionment.
The opinion in Mosca made obvious assumptions of medical facts that may or may not be consistent with current medical knowledge and technology when it opined that "emotional strain is too elusive a factor" and concluded that all cases of internal cardiovascular system failure, irrespective of the actual medical cause, must be the result of unusual strain or overexertion in order to be treated as work related. If the rule fashioned in Mosca is to be applied to deny benefits without regard to the presence of a pre-existing condition, and notwithstanding the presentation of competent, substantial medical evidence proving that the injury was work related (as does the majority decision in this case), then the decision actually precludes the adjudicatory process from accepting competent evidence of medical facts developed through advancing medical knowledge that is capable of explaining medical matters formerly considered unexplainable, or "too elusive a factor" in the words of the Mosca opinion. During the years since Victor Wine and Mosca were decided, advancements in medical science have considerably increased the knowledge and ability of medical specialists and physicians to diagnose and identify the specific or precise cause of various internal cardiovascular system injuries that previously could not be done. If increased medical knowledge enables physicians to be more specific today in determining whether a particular cardiovascular injury is or is not causally related to events or conditions of one's employment, judicial decisions should not preclude acceptance and reliance on it when the testimony meets the competent, substantial evidence test.
Application of the Mosca decision to deny benefits in this case judicially eliminates, for a lack of perceived causation, a whole class of injuries from coverage under the statute despite the availability of competent medical evidence that such injuries are causally related to one's employment. This court, sitting en banc on two occasions, has now extended the Victor Wine rule well beyond its original purpose and rationale. For this reason, it is entirely appropriate that the supreme court *871 revisit the rule it announced in Victor Wine, and to again define the scope of its applicability in cases where the record contains competent, substantial medical evidence establishing that a claimant's internal cardiovascular injury was causally related to an identified condition or event arising out of and during the course of the claimant's employment. Application of the Victor Wine rule to deny compensability in the face of such evidence of causation, as in this case and recently in Zundell v. Dade Co. Sch. Bd., 609 So.2d 1367 (Fla. 1st DCA 1992) (en banc), is nothing more than judicial amendment of the workers' compensation statute to exclude a whole category of internal cardiovascular system failures that arise out of and during the course of an employee's employment, limiting the right to benefits only in cases involving unusual physical strain or overexertion. I do not believe this result is within the original intent of the Victor Wine decision on rehearing granted.
In the instant case, the majority finds competent substantial evidence in the record to support the judge's finding that "within a reasonable degree of medical probability, the cause of the coronary artery spasm" suffered by Claimant was the angry, confrontational encounter she had with her supervisors, Mr. Kapocsi and Mr. Myers, at work. The majority further concludes, however, that to meet the arising-out-of-employment requirement, Claimant also had to establish, and the judge of compensation claims had to find, that the coronary artery spasm and resulting cardiovascular injury occurred as the result of unusual physical strain or overexertion not routine to the type of work she was accustomed to performing. There is no evidence in this case that a coronary artery spasm may be caused only by unusual stress or overexertion in that sense. I am not willing to say on the medical evidence in this record that the circumstances and effect of the angry confrontation are insufficient to meet the Victor Wine test. I am firmly of the view that denial of all benefits in this case is wholly unjustified in the face of the undisputed medical evidence accepted by the judge below and the majority opinion. I say this for two reasons.
First, there is no evidence that Claimant was suffering from any pre-existing disease or condition of the cardiovascular system that could or would have caused the coronary artery spasm diagnosed by Dr. Naman, whose testimony was accepted by the trier of fact. Claimant's high blood pressure was controlled with medication and the record contains no evidence that would support a finding that this condition, or any other specified preexisting condition of claimant's cardiovascular system, was the cause of the arterial spasm. Thus, its cause can only be attributed to an external event or condition present at the time the spasm occurred. Second, there is competent, substantial and undisputed evidence in this record that the most likely external event to have caused the arterial spasm was the physical reaction of claimant's cardiovascular system to the angry confrontation between Claimant and her superiors at work. This finding by the judge below has been accepted by this entire court as supported by competent, substantial evidence. Thus, whether or not a "coronary artery spasm" must be characterized as an "internal failure of the cardiovascular system" within the meaning of Mosca is irrelevant to the determination of the critical issue of causation if this undisputed evidence is legally accepted. The majority errs in judicially describing all cardiovascular accidents or injuries, regardless of the medical explanation underlying them, as an "internal failure of the cardiovascular system" that requires the precipitating cause of each such injury to be attributable to a unique activity defined as unusual physical strain or overexertion. As this record contains no medical evidence to support this conclusion, the majority relies totally on the medical assumptions made in the Mosca opinion. The majority opinion thus rules that competent medical evidence of causation is wholly irrelevant and makes a determination of scientific medical fact as a matter of law without any evidentiary basis for it in the record.
The majority opinion likewise errs in receding from a facially correct decision in Citrus Central, Inc. v. Gardner, 466 So.2d 369 (Fla. 1st DCA 1985). As previously discussed, there is no evidentiary basis in this record to support the conclusion that an arterial *872 spasm must necessarily be caused by a pre-existing condition unless the employee was subjected to undue physical strain or overexertion at work; on the contrary, the record establishes the medical fact, and the judge below so found, that an arterial spasm which temporarily closes off an artery can be and was in fact caused by the employee's physical reaction to the emotional tension and stress caused by the angry confrontation between Claimant and her superiors. Nor is there any basis for concluding that the decision in Citrus Central, based as it was on the medical evidence presented of record in that case, erred in concluding that the arterial spasm there suffered was not subject to the rule in Victor Wine and Mosca.
As I would affirm the order under review, I respectfully dissent. I fully agree, however, that the issue presented in this case should be certified to the supreme court as a question of great public importance. Like Judge Joanos, I would prefer to phrase the certified question somewhat differently and more broadly in view of the several recent opinions of this court (cited in the majority opinion) that, in my view, have misapplied the rule announced in Victor Wine well beyond its intended rationale and purpose.
NOTES
[1] While the court's opinion noted that the employer presented medical testimony that disputed any relationship between the sales meeting and the ruptured aneurysm, it was the function of the trier of fact, not the appellate court, to resolve the physician's conflicting testimony on the fact of causation.